593 A.2d 1094

Jeffrey C. **WEIDIG** et al.

v.

Brad **CRITES.**

**Misc. No. 43, Sept. Term, 1990.**

Court of Appeals of Maryland.

Aug. 19, 1991.

Motion for Reconsideration Denied Oct. 4, 1991.

Albert D. Brault (Daniel L. Shea, Janet S. Zigler, Brault, Graham, Scott & Brault, all on brief), Rockville, for appellant.

Deborah A. Vitale (Miller & Vitale, both on brief), Alexandria, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and BELL, JJ.

CHASANOW, Judge.

■ The following question has been certified to this Court by the United States District Court for the District of Maryland pursuant to the Uniform Certification of Questions of Law Act, Maryland Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Article, §§ 12–601 through 12–609:

"DOES THE HEALTH CARE MALPRACTICE CLAIMS ACT (COURTS AND JUDICIAL PROCEEDINGS ARTICLE, SECTION 3–2A–01, et seq.) AFFORD THE HEALTH CLAIMS ARBITRATION OFFICE SUBJECT MATTER JURISDICTION OVER A NON–HEALTH CARE PROVIDER WHO IS ALLEGED TO BE AN EMPLOYEE OF A HEALTH CARE PROVIDER AND WHICH EMPLOYEE IS ALLEGED TO HAVE PROVIDED HEALTH CARE TO THE PLAINTIFF, RESULTING IN A CLAIMED MEDICAL INJURY?"

Procedurally, this case is not new to us. It began when Brad Crites (Crites) filed a health claims arbitration proceeding against Jeffrey C. Weidig, M.D.; Jeffrey C. Weidig,

M.D., Chartered; and Joseph Kies (Kies). Kies filed a motion for summary judgment in that proceeding based on the fact that he was not a "health care provider" within the meaning of the Health Care Malpractice Claims Act, Md. Code (1974, 1989 Repl.Vol., 1990 Supp.), Courts & Judicial Proceedings Art., §§ 3–2A–01 through 3–2A–09, (the Act). The panel chairman denied Kies' motion, and Kies filed a complaint for injunctive relief in the Circuit Court for Montgomery County requesting a preemptory writ prohibiting the exercise of jurisdiction over him in the arbitration proceedings and mandating that he be dismissed from those proceedings for want of jurisdiction. The circuit court denied the requested relief, and Kies appealed to the Court of Special Appeals. The intermediate appellate court affirmed the judgment of the circuit court. *Weidig v. Tabler,* 81 Md.App. 488, 568 A.2d 868, *vacated, sub nom.,* 321 Md. 1, 580 A.2d 701 (1990). We granted Kies' petition for a writ of certiorari, but while that action was pending, an arbitration award was entered against Kies and Weidig. A notice of rejection and an action to nullify the award were filed in the Circuit Court for Montgomery County, at which time Crites filed a complaint in the United States District Court for the District of Maryland. In view of those proceedings, we determined that the issue before us had become moot. We vacated the judgment of the Court of Special Appeals, remanding to that court with directions to vacate the judgment of the Circuit Court for Montgomery County and remand to the circuit court with directions to dismiss the action as moot. *Kies v. Tabler,* 321 Md. 1, 580 A.2d 701 (1990). We now reach the issue as a certified question.

The parties have referred to the issue in this case as one of jurisdiction, that is, whether the Health Claims Arbitration Office (HCAO) has "jurisdiction" over a non-health care provider. Jurisdiction is the authority by which a court hears and determines a judicial proceeding. *Black's Law Dictionary* 766 (5th ed. 1979). Health claims arbitration is not a judicial proceeding, nor is it an administrative proceeding. *Attorney General v. Johnson,* 282 Md. 274, 283–88,

385 A.2d 57, 63–65, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978); *Oxtoby v. McGowan,* 294 Md. 83, 91, 447 A.2d 860, 864–65 (1982). Furthermore, the HCAO "exercises no judicial function whatever." *Johnson,* 282 Md. at 286, 385 A.2d at 64. The term "jurisdiction," therefore, is a misnomer. Perhaps more accurately, the issue before us is not whether the HCAO has power or authority over a non-health care provider; it is whether a non-health care provider can come within the class of persons that are required by statute to submit to arbitration under the Act. *See Ott v. Kaiser–Georgetown Health Plan,* 309 Md. 641, 645, 526 A.2d 46, 49 (1987) (The requirement of mandatory arbitration creates a condition precedent to institution of court action; it does not divest courts of subject matter jurisdiction over health claims).

Generally, "[a] party cannot be required to submit any dispute to arbitration that it has not agreed to submit." *Gold Coast Mall v. Larmar Corp.,* 298 Md. 96, 103, 468 A.2d 91, 95 (1983); *accord United Steelwkrs. of Am. v. Warrior & Gulf N. Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960); *C.W. Jackson & Associates v. Brooks,* 289 Md. 658, 666, 426 A.2d 378, 382 (1981). The statute at issue in the instant case is an exception to that general rule. It requires that certain health care providers in this state must submit to arbitration of medical malpractice claims.

We recently summarized the rules of statutory construction in *State v. Bricker,* 321 Md. 86, 581 A.2d 9 (1990):

"When interpreting a statute, the starting point is the wording of the relevant provisions. If 'the language in question [is] so clearly consistent with apparent purpose (and not productive of any absurd result) ... further research [is] unnecessary.' *Kaczorowski v. City of Baltimore,* 309 Md. 505, 515, 525 A.2d 628, 633 (1987). In the event that ambiguity clouds the precise application of the statute, the cardinal rule of statutory construction is to ascertain and effectuate legislative intent. *Taxiera v. Malkus,* 320 Md. 471, 480, 578 A.2d 761, 765 (1990);

*Harford County v. University,* 318 Md. 525, 529, 569 A.2d 649, 651 (1990); *Jones v. State,* 311 Md. 398, 405, 535 A.2d 471, 474 (1988); *In re Ramont K.,* 305 Md. 482, 484, 505 A.2d 507, 508 (1986). To perform this task, legislative intent should be gleaned first from the phrasing of the statute itself, giving the words their 'ordinary and popularly understood meaning, absent a manifest contrary legislative intention.' *In re Arnold M.,* 298 Md. 515, 520, 471 A.2d 313, 315 (1984). *See also Jones,* 311 Md. at 405, 535 A.2d at 474. When engaging in the interpretive process, however, the purpose, aim or policy of the legislature cannot be disregarded. *Taxiera,* 320 Md. at 480, 578 A.2d at 765; *Harford County v. University,* 318 Md. at 529, 569 A.2d at 651; *Kaczorowski,* 309 Md. at 513, 525 A.2d at 632. Resultant conclusions are to be reasonable, logical and consistent with common sense. *Harford County v. University,* 318 Md. at 529–30, 569 A.2d at 651; *Potter v. Bethesda Fire Dept.,* 309 Md. 347, 353, 524 A.2d 61, 64 (1987)."

*Bricker,* 321 Md. at 92–93, 581 A.2d at 12. The particular statute at issue in this case is Courts & Judicial Proceedings Art., § 3–2A–01(e), which provides,

" 'Health care provider' means a hospital, a related institution as defined in § 19–301 of the Health–General Article, a physician, an osteopath, an optometrist, a chiropractor, a registered or licensed practical nurse, a dentist, a podiatrist, a psychologist, a licensed certified social worker-clinical, and a physical therapist, licensed or authorized to provide one or more health care services in Maryland. 'Health care provider' does not mean any nursing institution conducted by and for those who rely upon treatment by spiritual means through prayer alone in accordance with the tenets and practices of a recognized church or religious denomination."

Kies was an employee of Dr. Weidig or of Jeffrey C. Weidig, M.D., Chartered. He worked in Dr. Weidig's office and was not a licensed physician. No allegation was made, and it does not appear, that he was a registered or licensed

practical nurse. As we shall explain, Crites' claim that Kies is governed by the Act is based on his argument that Kies was a "physician," albeit an unlicensed one.

Crites would have us ignore the plain meaning principle of statutory construction, which holds:

"The threshold inquiry in any issue of statutory construction is whether the language is ambiguous or of uncertain meaning. If it is not, then the Court applies its plain and ordinary meaning. Only where the language is of uncertain meaning or doubtful import should the Court seek to judicially construe the statute." (Citations omitted.)

*Taylor v. Dep't of Employment*, 308 Md. 468, 472–73, 520 A.2d 379, 381 (1987). Because the Act does not define the word "physician," Crites urges that we should go outside the Act in defining the phrase "physician, ... licensed or authorized to provide ... health care services in Maryland," and urges that we consult the Health Occupations Article of the Maryland Code.[1] The theory he presents is a creative one.

Maryland Code (1981, 1991 Repl.Vol.), Health Occupations Art., § 14–101(i), defines "physician" as "an individual who practices medicine." "Practice medicine" is defined in subsection (j) of the same section, which states, in pertinent part,

"(1) ... to engage, with or without compensation, in medical:

(i) Diagnosis; ...

(iii) Treatment; or

(iv) Surgery.

---

1. It has also been suggested that a recently enacted statute regarding medical records, which defines the phrase "health care provider," might illuminate the legislative intent as to whether employees fall within the scope of this phrase. Maryland Code (1982, 1990 Repl.Vol., 1990 Supp.), Health–General Article, § 4–301(h). The Legislature made clear its intention with regard to the definition of "health care provider" within the Act itself. The Act defines "health care provider" in section 3–2A–01(e). We need not go outside the Act for the meaning of this phrase.

(2) 'Practice medicine' includes doing, undertaking, professing to do, and attempting any of the following:

(i) Diagnosing, ... treating, preventing, prescribing for, or removing any physical, mental, or emotional ailment or supposed ailment of an individual:

1. By physical, mental, emotional, or other process that is exercised or invoked by the practitioner, the patient, or both; or

2. By appliance, ... operation, or treatment...."

According to Crites, Kies was a physician as defined in the Health Occupations Article because he practiced medicine by diagnosing Crites' baldness and by assisting at surgery. If we accept this analysis, a boy scout who renders medical aid to an injured person on a mountain trail has "practiced medicine," making him a physician. A waitress who performs the Heimlich maneuver on a choking restaurant patron has "practiced medicine," making her a physician.

As we recognized in *Kaczorowski*, 309 Md. at 515, 525 A.2d at 633, if "the language in question [is] so clearly consistent with apparent purpose (and not productive of any absurd result) ... further research [is] unnecessary." In the instant case, the plain meaning of the word "physician" is clearly consistent with the Act's apparent purpose, obviating the need to go outside the statute in defining it. Furthermore, the strained construction urged by Crites may be productive of an absurd result.

We do not believe that the Legislature intended the Act to require anyone who "practices medicine" to submit to arbitration of a claim of negligence related to that activity. Judge Couch, writing for the Court in *Cannon v. McKen*, 296 Md. 27, 36, 459 A.2d 196, 201 (1983), stated, "the Act covers only those claims for damages arising from the rendering or failure to render health care where there has been a breach by the defendant, *in his professional capacity*, of his duty to exercise his professional expertise or skill." (Emphasis added.) *Accord Nichols v. Wilson*, 296 Md. 154, 460 A.2d 57 (1983). Kies no more rendered health care "in his professional capacity" than the helpful boy

scout or the resourceful waitress. The term "physician" in the Act enjoys its plain and ordinary meaning, that is, a doctor of medicine.

Crites further argues that Kies was authorized to provide health care services in Maryland by virtue of Md.Code (1981, 1991 Repl.Vol.), Health Occupations Art., § 14–306, which permits certain individuals "to whom duties are delegated by a licensed physician [to] perform those duties without a license." The statute to which Crites refers exempts persons from prosecution for practicing medicine without a license when they perform duties delegated to them by licensed physicians. It does not confer upon them the status of a physician for purposes of the Act. Kies may or may not have been lawfully engaged in the practice of medicine, but he is not a physician as that term is generally understood.

Although we make no factual findings in this regard, we note that Kies may have been an agent of a physician who had delegated certain duties to him, which might be construed as the practice of medicine. A doctor cannot bestow upon another the status of physician simply by delegating duties related to the practice of medicine. It matters not that he may have been, *arguendo*, authorized to provide health care. Kies was not a physician. The Act requires that a "physician, ... licensed or authorized to provide ... health care services in Maryland" must submit to arbitration. "[L]icensed or authorized" is an adverbial phrase that denotes which physicians are covered; it does not extend the definition of physician beyond its plain meaning.[2]

In construing the Act, we must consider its "purpose, aim or policy.... Resultant conclusions are to be reasonable, logical and consistent with common sense." *Bricker*, 321 Md. at 92, 581 A.2d at 12 (citations omitted). It has been

---

**2.** Crites also makes an argument that Kies had apparent authority to practice medicine. Since we find that authority, whether express or apparent, does not make Kies a physician under the Act, this argument likewise fails.

recognized that the Act was enacted in response to a perceived "medical malpractice insurance 'crisis.'" *Cannon,* 296 Md. at 34, 459 A.2d at 200; *Johnson,* 282 Md. at 280–81, 385 A.2d at 61. In *Cannon,* we held,

> "[T]he legislature did not intend that claims for damages against a health care provider, arising from non-professional circumstances where there was no violation of the provider's professional duty to exercise care, to be covered by the Act. It is patent that the legislature intended only those claims which the courts have traditionally viewed as professional malpractice to be covered by the Act."

296 Md. at 34, 459 A.2d at 200. We found "support for this conclusion" from *Zobac v. Southeastern Hospital Dist., Etc.,* 382 So.2d 829 (Fla.Ct.App.1980), in which the court held:

> " '[I]t is clear to us that the legislative intent was to submit to Medical Liability Mediation only claims arising out of those acts or conduct which are peculiarly malpractice.... Malpractice by definition means "a dereliction from professional duty or a failure of professional skill or learning that results in injury, loss or damage." It does not include janitorial negligence....' " (Footnote omitted.)

*Cannon,* 296 Md. at 34, 459 A.2d at 200 (quoting *Zobac,* 382 So.2d at 830–31). A physician in a medical malpractice action, which is the subject of compulsory arbitration under the Act, is held to " 'that degree of care and skill which is expected of a reasonably competent [physician] in the same class to which he belongs, acting in the same or similar circumstances.' " *Figueiredo–Torres v. Nickel,* 321 Md. 642, 650, 584 A.2d 69, 73 (1991) (quoting *Shilkret v. Annapolis Emergency Hosp.,* 276 Md. 187, 200, 349 A.2d 245, 253 (1975)). Obviously, Kies cannot be held to the professional standard of a physician. Therefore, requiring that Kies submit to mandatory arbitration does not serve the purposes of the Act and results in a conclusion that is illogical and inconsistent with common sense.

The only case cited to us in which a non-health care provider was compelled to arbitrate under the Act is *Group Health Ass'n v. Blumenthal,* 295 Md. 104, 453 A.2d 1198 (1983), involving a health maintenance organization (HMO) that employed an allegedly negligent obstetrician. Although the Court concluded that the HMO was not a health care provider under the Act, the HMO was required to submit to arbitration. The Court reasoned,

> "The Blumenthals do not allege that [the HMO] itself was negligent; instead, the complaint against [the HMO] is based on the doctrine of *respondeat superior.* Simply stated, the Blumenthals hope to prove that Dr. Barrows and other [HMO] employees were negligent in treating Mrs. Blumenthal, and that [the HMO] as their employer is vicariously liable for that negligence."

*Id.* at 111, 453 A.2d at 1203. *Blumenthal* may easily be distinguished from the case at bar. In *Blumenthal,* the HMO's potential liability stemmed wholly from the alleged negligence of its employees. If the employees, who were health care providers under the Act, were not negligent, the HMO was not liable. Any claim against the HMO was dependent upon the negligence claims against the health care providers and was not capable of being sustained independently of those claims. The negligence claims could only be resolved by first submitting the claims to arbitration. If the claims against the employees perished in the arbitration process, so did the claim against the HMO. It would be an absurd waste of judicial and litigant resources to require filing of a claim that could not exist independently in circuit court before the outcome of arbitration of the negligence claims upon which it was based. We found that such a result was not the intention of the Legislature when it enacted the Act. The instant case presents the reverse situation. Negligence is alleged directly against Kies and Dr. Weidig. Kies is not a health care provider under the Act and may not be compelled to arbitrate. Dr. Weidig is a health care provider and must arbitrate. The claim against

Kies survives regardless of the outcome of the arbitration; it is not dependent upon the claim against the doctor.

Crites also relies on footnote 4 of *Cannon*, which states, "We hasten to add that claims of strict liability and breach of warranty may not always be arbitrable; however, if such claims are related to and incorporate a negligence claim, . . . which may be arbitrable, then all counts will be arbitrable." 296 Md. at 38 n. 4, 459 A.2d at 202 n. 4. The instant case does not present the question whether other claims may be joined when all parties are properly before an arbitration panel; rather, it presents the question whether other parties may properly be compelled to submit to arbitration under the Act.

The difficulty presented where claims arise jointly against health care providers and non-health care providers is not insurmountable. In such circumstances, a plaintiff might file two actions, one with the HCAO under the Act against the health care provider, the other in court against the non-health care provider. At that point, a stay may be requested in the court action to avoid undue expense and preserve judicial resources until the arbitration process can be completed. If a trial of the claim against the health care provider is sought following arbitration, the cases may then be consolidated; otherwise, trial would proceed only against the non-health care provider. Alternatively, if all parties agree, arbitration could be waived under Md.Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Art., § 3–2A–06A, and trial could proceed on all claims together.[3]

It is manifest that the Legislature intended that the word "physician" as used in the Act should have its ordinary meaning. The modifying phrase "licensed or authorized" does not change that meaning. Absent an agree-

---

3. We are cognizant that this option was not available to Crites, as Maryland Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Article, § 3–2A–06A is applicable only to actions arising on or after July 1, 1987. Chapter 596 of the Acts of 1987, §§ 4, 5. Nevertheless, this alternative may assist future non-health care providers who find themselves confronted with this situation.

ment to do so, a person who is not a health care provider as defined by the Act may not be compelled to submit to binding arbitration. It follows that the answer to the certified question is no.

CERTIFIED QUESTION ANSWERED AS SET FORTH ABOVE. COSTS IN THIS COURT TO BE PAID BY APPELLEE.