640 A.2d 1100

**Lawrence W. ADLER, M.D. t/u/o National Union Fire Insurance Company of Pittsburgh, Pennsylvania**

v.

**Lawrence R. HYMAN.**

**No. 125, Sept. Term, 1993.**

Court of Appeals of Maryland.

May 9, 1994.

Charles Martinez (Terri Goldberg, Eccleston and Wolf, all on brief), Baltimore, for appellant.

Richard L. Flax (Mason, Ketterman & Morgan, all on brief), Baltimore, for appellee.

Argued before ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ., and CHARLES E. ORTH, Jr., Judge * (retired), Specially Assigned.

RODOWSKY, Judge.

This is a subrogation action for contribution from an alleged joint tortfeasor, brought by the malpractice insurer of one health care provider against another health care provider following settlement by the subrogee of the underlying claim in the Health Claims Arbitration Office (HCAO). The claim for contribution was initially filed directly in a circuit court, which dismissed. We hold that the claim for contribution must be arbitrated before the HCAO, so that the action was properly dismissed by the circuit court.

The appellant, and plaintiff below, is Lawrence W. Adler, M.D. (Dr. Adler), suing to the use of National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union), the real party in interest. The appellee, and defendant below, is Lawrence R. Hyman, M.D. (Dr. Hyman). The underlying malpractice claim was brought in the HCAO against Dr. Adler and Spring Grove Hospital Center (Spring Grove). That claim was dismissed with prejudice in consideration of a payment by National Union to the underlying claimants which also extinguished any liability of Dr. Hyman to those claimants.

The allegations of the underlying claim involved James Pescetto (Pescetto), age twenty-nine, married, and the father of two sons. On April 14, 1988 Pescetto was involuntarily admitted to Spring Grove, a psychiatric hospital, based on the certifications of two independent physicians that he presented a danger to his own life. Dr. Adler, a psychiatrist, was assigned to treat him. There were various negligent acts and omissions by Dr. Adler, according to the HCAO claim allegations. Pescetto was released from Spring Grove five days

---

* Orth, J., participated in the hearing and conference of this opinion but died prior to its adoption by the Court.

after his admission. Within twelve hours of his release Pescetto hanged himself in his home.

Pescetto's widow and sons filed wrongful death and survival claims in the HCAO. After National Union settled those claims, it filed a complaint against Dr. Hyman in the Circuit Court for Howard County. The theory of the complaint is that Dr. Hyman was a joint tortfeasor with Dr. Adler in causing the harms suffered by the Pescetto claimants, and that Dr. Hyman is liable to National Union for his pro rata share of the amount paid in settlement of the Pescettos' claims.

The factual allegations of the circuit court complaint are that Dr. Hyman had been Pescetto's treating psychiatrist from February 21, 1988 to April 14, 1988; that Pescetto had expressed to Dr. Hyman his intention to commit suicide; and that Dr. Hyman made no attempt to communicate this and other relevant information to Dr. Adler or to anyone else at Spring Grove. Dr. Hyman thereby allegedly breached his "duty to James Pescetto as a mental health care professional."

Dr. Hyman moved to dismiss the action, asserting that the Health Care Malpractice Claims Act (the Act), Md.Code (1983, 1989 Repl.Vol., 1993 Cum.Supp.), § 3–2A–01 *et seq.* of the Courts and Judicial Proceedings Article, places initial jurisdiction in the HCAO. *See generally Oxtoby v. McGowan,* 294 Md. 83, 447 A.2d 860 (1982); *Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978). The relevant provisions of the Act are §§ 3–2A–02(a)(1) and (2) and 3–2A–01(f) which respectively read:

"§ 3–2A–02. Exclusiveness of procedures.

(a) *Claims and actions to which subtitle applicable.*—(1) All claims, suits, and actions, including cross claims, third-party claims, and actions under Subtitle 9 of this title, by a person against a health care provider for medical injury allegedly suffered by the person in which damages of more than the limit of the concurrent jurisdiction of the District

Court are sought are subject to and shall be governed by the provisions of this subtitle.

(2) An action or suit of that type may not be brought or pursued in any court of this State except in accordance with this subtitle."

"§ 3–2A–01 Definitions.

(f) *Medical injury.*—'Medical injury' means injury arising or resulting from the rendering or failure to render health care."

Specifically, Dr. Hyman argued to the circuit court, and argues here, that this action for contribution involved a medical injury, encompassed by § 3–2A–01(f) of the Act, because National Union's claim depends on proving psychiatric malpractice. Dr. Hyman further argues that to hold otherwise would unfairly deprive him of his "right" to initial arbitration before the HCAO, a "right" that Dr. Adler was accorded.

In opposition to dismissal National Union argued, and argues here, that the injury for which it seeks compensation arose from the settlement payment to the Pescettos, and not from the alleged psychiatric malpractice of Dr. Hyman. Therefore, National Union submits, its claim is not for "medical injury," and thus does not fall within the Act. National Union's second and related argument is that it was not "the person" who allegedly suffered medical injury, as required by § 3–2A–02(a)(1).

The circuit court dismissed the action without prejudice. National Union noted an appeal to the Court of Special Appeals, and this Court issued a writ of certiorari on its own motion prior to consideration of the matter by the intermediate appellate court,[1] 333 Md. 172, 634 A.2d 47.

---

1. It appears that the circuit court action by National Union was merely protective, and that National Union also had filed a claim for contribution in the HCAO in order to cover both of the contingencies involved in construing the Act.

National Union also sought a stay of dismissal in the circuit court, but that stay was denied. At oral argument in this Court, National Union acknowledged that the definitive construction of the Act by this Court

The answer to National Union's contentions is controlled by holdings in *Group Health Ass'n v. Blumenthal*, 295 Md. 104, 453 A.2d 1198 (1983). Mrs. Blumenthal allegedly received negligent prenatal care from a health care provider, Dr. Barrows, who was employed by Group Health Association (GHA), a licensed health maintenance organization. She and her husband filed a malpractice claim against Dr. Barrows with the HCAO and a complaint based on *respondeat superior* against GHA in the United States District Court for the District of Maryland. GHA filed a third-party complaint "for indemnification and contribution" against Dr. Barrows in the federal court action. *Id.* at 109, 453 A.2d at 1201–02.

The district court certified several questions to this Court, of which two are relevant to this case: (1) whether the Blumenthals' action against GHA was subject to mandatory arbitration, and (2) whether GHA's third-party claim against Dr. Barrows was subject to mandatory arbitration. *Id.* at 110–16, 453 A.2d at 1202–05.

Clearly GHA was not a "health care provider" under the Act. The Blumenthals' assertion of vicarious liability against GHA nevertheless was subject to mandatory arbitration because a malpractice claim against a health care provider, Dr. Barrows, formed the basis for the assertion of vicarious liability. *Id.* at 112, 453 A.2d at 1203. The word "claims" in § 3–2A–02(a) is to be broadly interpreted to mean an "aggregate of operative facts giving ground or occasion for judicial action, as distinguished from the narrow concept of a cause of action." *Id.* (interior quotation marks and attributions omitted).

In the case at hand the *Blumenthal* definition of "claims ... against a health care provider" includes National Union's claim for contribution, because the aggregate of operative facts that would give rise to the claimed right to contribution

---

will moot the stay issue. Compare *Jewell v. Malamet*, 322 Md. 262, 276, 587 A.2d 474, 481 (1991) (stay of circuit court action appropriate to prevent running of limitations where jurisdictional facts will be initially determined in HCAO proceedings).

necessarily includes proving as a fact the alleged negligence of Dr. Hyman.

*Weidig v. Crites*, 323 Md. 408, 593 A.2d 1094 (1991), confirms this conclusion. *Weidig* was· an action against a non-physician employee of a physician. That claim did not have to be arbitrated, because the employee was not a "health care provider." *Id.* at 417, 593 A.2d at 1098. We distinguished *Blumenthal* in *Weidig*, saying:

"In *Blumenthal*, [GHA's] potential liability stemmed wholly from the alleged negligence of its employees. If the employees, who were health care providers under the Act, were not negligent, [GHA] was not liable. Any claim against [GHA] was dependent upon the negligence claims against the health care providers and was not capable of being sustained independently of those claims. The negligence claims could only be resolved by first submitting the claims to arbitration. If the claims against the employees perished in the arbitration process, so did the claim against [GHA]."

*Id.* Here, National Union's claim for contribution cannot be sustained independently of proof of negligence on the part of a health care provider, Dr. Hyman. That negligence claim must be resolved first in arbitration.

At oral argument in this Court National Union sought to distinguish *Blumenthal* on the basis of timing. In *Blumenthal*, GHA asserted its third-party claim while the claim of the Blumenthals was pending and· undecided, but National Union did not assert its claim against Dr. Hyman until the claims by the Pescettos had been ·terminated by settlement. Further, National Union submits that GHA's third-party claim in *Blumenthal* necessarily was for indemnification, whereas National Union's claim against Dr. Hyman seeks contribution. The significance, according to National Union, is that its claim for contribution did not arise until it had paid the Pescettos.

None of these attempted distinctions makes any difference under the broad construction of "claim ... for medical injury" that our cases have placed on the Act. The express reference

to third-party claims in § 3–2A–02(a)(1) clearly encompasses claims for contribution. The purpose of the Act would not be served by restricting arbitration of claims for contribution to those asserted as part of the same litigation that includes the claim by the individual who directly suffered a personal injury. The purpose of the Act is to screen malpractice claims, ferret out meritless ones, and, in theory, thereby lower the cost of malpractice insurance and the overall costs of health care. *Blumenthal*, 295 Md. at 113, 453 A.2d at 1204. It would be an unreasonable construction of the Act, and inconsistent with its purpose, to hold that the medical malpractice insurance carrier for a health care provider in the position of Dr. Hyman would defend in arbitration if the pleading seeking contribution is a third-party complaint, but that that same insurer would not have a right to insist on the assumed benefit of arbitration if the pleading asserting the claim for contribution is an original complaint in an independent action, after termination of the underlying claim.

*Blumenthal* also dispatches National Union's argument that only an individual may suffer "medical injury" at the hands of a health care provider. Although GHA, the third-party complainant against Dr. Barrows in *Blumenthal*, was not an individual human being who directly suffered a personal injury, GHA's third-party claim was subject to mandatory arbitration. We noted that a corporation is a "person" under ordinary rules of statutory interpretation, and that Dr. Barrows was a health care provider. *Id.* at 116, 453 A.2d at 1205. We explained that GHA's contribution or indemnity claim was for a "medical injury" because:

> "Section 3–2A–01(f) defines 'medical injury' as an 'injury arising or resulting from the rendering or failure to render health care.' This definition of 'medical injury' plainly encompasses GHA's claimed injury. According to GHA, if Dr. Barrows is found to have been negligent in rendering medical care to Mrs. Blumenthal, and liability for that negligence is imputed to GHA, then GHA will have suffered a medical injury as defined in § 3–2A–01(f). GHA's injury will have arisen out of Barrows's rendering of medical care."

*Id.* Similarly, National Union is a corporate "person" that suffered a "medical injury."

For the foregoing reasons the Circuit Court for Howard County correctly dismissed National Union's complaint without prejudice.

*JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.*