758 A.2d 1019

**George J. MATHEWS, et al.**

**v.**

**Rita Underwood GARY.**

**No. 1445, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Sept. 5, 2000.

Judith C. Ensor (Whiteford, Taylor & Preston, L.L.P. on the brief), Towson, for appellant, Yousaf.

Timothy L. Mullin, Jr. (Donna P. Sturtz, and Miles & Stockbridge P.C. on the brief), Baltimore, for appellant, Mathews.

Leo Wm. Dunn, Jr., Chester, for appellee.

Argued before MURPHY, C.J., and WENNER and THIEME, JJ.

MURPHY, Chief Judge.

In the Circuit Court for Prince George's County, Rita Underwood Gary, appellee, asserted a medical malpractice claim against Doctors Shaheer Yousaf and George J. Matthews, appellants, who had (1) treated appellee for injuries she sustained in an automobile accident, and (2) testified on appellee's behalf during the trial of her personal injury action against the driver of the other vehicle involved in that accident. A jury agreed with appellee's claim that appellants had subjected her to "unnecessary" post-accident surgery. Appellants now present the following questions for our review:

I. Did the trial court err as a matter of law by denying appellants' motions for summary judgment and/or motions for judgment notwithstanding the verdict, as

appellee's claim was barred by the application of the doctrine of judicial estoppel?

II.  Did the trial court err as a matter of law by denying appellants' motions for summary judgment and/or motions for judgment notwithstanding the verdict, as appellee's claim was barred by the application of the doctrine of collateral estoppel?

III.  Did the trial court err as a matter of law by denying appellants' motions for summary judgment and/or motions for judgment notwithstanding the verdict, as appellee was awarded all damages from a jury in a prior litigation and received a satisfaction, thereby eliminating any recoverable damages?

IV.  Did the trial court err in denying appellants' motions for new trial and/or remittitur based on the fact that appellee had been awarded damages to which she was not entitled?

For the reasons that follow, we shall reverse the judgment of the circuit court.

### Factual Background

On July 10, 1991, appellee sustained a lower back injury in an auto accident caused by the negligence of one Marie Thompson (Ms. Thompson). Appellee sought medical treatment for her injury and saw appellant Yousaf in August of 1991. Dr. Yousaf prescribed (1) additional medication, (2) physical therapy, and (3) a back brace. Appellee returned to Dr. Yousaf the next month, complaining that her condition was worsening. At this time Dr. Yousaf suggested that appellee (1) wear a back brace, (2) attend "back school" to help prevent further pain, and (3) lose some weight to alleviate pain.

When appellee's condition had not improved by October of 1991, Dr. Yousaf suggested "facet block treatment," which consisted of an injection of anesthetic and cortisone into the facet joint at a particular point on her spine. Appellee agreed to this procedure, and underwent several series of injections. When the injections only alleviated the pain on a temporary

basis, Dr. Yousaf concluded that appellee was suffering from post traumatic facet syndrome, and referred her to a neurosurgeon, appellant Matthews. Appellee met with Dr. Matthews in March of 1992.

Dr. Matthews agreed with Dr. Yousaf that appellee was suffering from lumbar facet injury syndrome. Both doctors explained to appellee that bone fusion surgery was a possible cure, but carried certain risks and no guarantees. Appellee agreed to have the surgery. On May 20, 1992, appellants performed what is known as an "anterior interbody fusion and associated iliac crest bone graft harvest." On August 3, 1992, during a post-surgical appointment, appellee informed Dr. Matthews that she had considerable improvement to her back and Dr. Matthews noted that her swelling had subsided. On April 16, 1993, appellee informed Dr. Yousaf that her pain and function levels had improved significantly since the operation.

## Procedural History

### A. The Charles County Litigation: Appellee v. Thompson

In the Circuit Court for Charles County, appellee asserted an auto negligence action against Ms. Thompson. Prior to trial, appellee was placed on notice through pretrial discovery that Ms. Thompson's defense would include the contention that appellee's post-accident surgery was "unnecessary." Appellee decided, however, to ask the Charles County jury for an award of damages that included compensation for her surgery. Appellee's direct examination included the following testimony:

A. He [Dr. Yousaf] had told me that they can only give 3 blocks and that if after the third one we would have to talk about surgery.

Q. There come a time you spoke with him about surgery. What type of surgery did he indicate would be *necessary?*

A. In [sic] an anterior fusion.

Q. Did he explain or describe the type of surgery to you?

A. Yes.

Q. Did he *recommend or encourage* it or what was the situation?

A. He had said that it would possibly help my back and the pain but there were no guarantees.

\* \* \*

Q. Did he [Dr. Matthews] have any discussion with you at that time relative to the *necessity for any surgery?*

A. *Yes.*

Q. What if anything did he tell you would be the type of surgery that would be performed?

A. An anterior fusion.

Q. Did he explain to you by an anterior fusion what was ment [sic] by it?

A. Yes.

(emphasis added).

Appellee called Dr. Yousaf to testify in support of her personal injury claim against Ms. Thompson. The following transpired during his testimony:

Q. Now, Doctor, I want to show you, Doctor, let me ask you this, *do you have an opinion, medical probability, the operation you performed in and assisted in was necessary to have in her case.*

A. *Based on indications* (emphasis added).

Appellee also called Dr. Matthews, who testified that appellee's surgery was related to "trauma from the accident of July 10, 1991."

Ms. Thompson's defense included the contention that appellee's May 20, 1992 surgery was unnecessary. Two expert witnesses testified in support of that contention. Dr. Ignacio Rodriguez opined that appellee suffered a soft tissue injury and, because there was no damage to her facet, surgery was unnecessary. Dr. Joseph Finizio testified via a videotaped deposition that, because appellee did not have facet injury syndrome, surgery was not required.

The closing argument of appellee's counsel included the following comments:

... or we can try surgery but wait a minute I want a second opinion. I want someone else to look at it. Then she goes to Dr. Matthews, different discipline, different specialty, not an orthopedic surgeon, a neurosurgeon, an individual that practiced and operates in this area as one of the specialists. He examines her, has her history, he goes down the exact same way down the back and the hips ...

Doctor Matthews says you don't have a disk problem. That is specifically what he said. He said you have a disruption of facet joints and it is locking up up [sic] those disks, and when you are walking they were moving together and it rubs and it has to be corrected or you have to live with it. And he goes through the nature of the exam, he goes through what he has—what it will be and he says it may or may not be helpful. *What do you want to do? She says I have got to have relief and she goes to surgery.* Now what happens in surgery? I am not going to get into all the technicalities, it has been explained to you. *But she had some relief. She came out a better person physically than when she went in.*

She is now classified to be 30 years permanently injured. 30 percent permanently injured....

*Error is what I believe we have in Doctor Finizio's* studies and reports. Why? They all tell us there was no degenerative disk material whatsoever in this woman's body. And they are going to read Dr. Matthews' report in these records, a surgical report. And he tells you that he took disk material from the body from the facets and the facets went down to pathology. What does pathology think about the disks when they examine it? What does it reveal? It reveals degenerative disk material....

And I think there was some improvement. It doesn't make any difference what I think, whether there was or wasn't, Mrs. Underwood has stated there was improvement, that she feels better....

The way it was. Shakespeare said it years and years ago, in the play the Merchant of Venice. A pound of flesh. A pound of flesh. What price on it? ...

It [the surgery] was an attempt to alleviate the pain. She didn't deny that. That is part of the progressive step where we're going. You didn't hear any testimony saying that he [the surgeon] shouldn't have done that. *It was called for and it was an effort to relieve this woman. Do you think she wanted to go to surgery? Do you think she wants the ugly scar in front of her?*

*She did it because she needed the aid and assistance* (emphasis added).

Although the jury returned a verdict for appellee, it awarded her only $8,337.00 for medical expenses, $750 for lost wages, and no damages for pain and suffering.[1] Appellee moved for a new trial on the issue of damages. When that was denied, she noted an appeal to this Court. While that appeal was pending, appellee settled her claim against Ms. Thompson, filed an Order of Satisfaction, and dismissed the appeal.

### B. The Prince George's County Litigation: Appellee v. Appellants

In the Circuit Court for Prince George's County, approximately one week after she settled her claim against Ms. Thompson, appellee filed a medical malpractice claim against appellants in which she sought the identical amount of damages that she had sought in the auto negligence case. Appellants moved for summary judgment, arguing that appellee's claims against them were barred as a result of the claim she had asserted against Ms. Thompson in Charles County. Those motions were denied and the case proceeded to trial.

---

1. The jurors were not presented with a "special" verdict sheet that required them to answer whether they were persuaded that appellee's surgery was necessary.

During opening statements, appellee's counsel told the jury that appellee's case against appellants was based on, "among other things," an unnecessary operation. Appellee offered the deposition testimony of Dr. Finizio who opined that appellee was not a candidate for surgery. According to Dr. Finizio, while appellants met the standard of care with regard to the surgery, they failed to meet the standard of care with regard to the decision to operate. Appellee also offered the deposition testimony of Dr. Rodriguez, who opined that the surgery was unnecessary.

Appellants defended the claim on the grounds that the surgery was necessary and that, not only did appellee consent, but her condition improved thereafter.[2] Dr. Yousaf explained the purpose of the surgery and how it related to appellee's condition. Dr. Matthews testified that he treated appellee because Dr. Yousaf exhausted all conservative treatment and it was "believed that surgery may have to be an option." He also testified that appellee's condition was much better after the surgery.

The jurors were instructed that the

only issue in the case is whether the surgical treatment was negligent or not.

During appellee's closing argument, her counsel argued that

here's a woman who has two levels of her back totally changed. The mechanics will never work again. She will live and she will suffer with it. She will lift her children, she will put them down. She will have to walk, she will have to go up steps, she will have to go down steps. She probably will never wear a high heel again. All of these things that she will do, which we all normally do, will create pain. And we suggest to you that *that pain is caused by a totally completely unnecessary operation, that it didn't have to happen, but it did* (emphasis added).

---

**2.** Appellee admitted on cross-examination that there was a 50% improvement after surgery.

**578**

The jury found in favor of appellee and awarded her $437,073.69 in damages. The circuit court denied appellants' post-trial motions and this appeal followed.

## Discussion

### I.  Judicial Estoppel

█ The circuit court gave the following explanation for denying appellants' motion for summary judgment:

> I don't see anything in the law that precludes the plaintiff from pursuing a medical negligence action against the very doctors who treated her in the underlying tort case ...
>
> The whole reason that we have a separate scheme of litigation for health claims issues is that a patient must rely on her treating physicians in the automobile case in deciding what, if anything, to do about it.  The mere fact that the auto tort feasor was found to be negligent, and therefore responsible for any consequential damages does not preclude her from later determining that the physicians who treated her were in fact negligent as well.
>
> And I believe to rule otherwise would be to turn the health care arbitration system designed by the Legislature on its head, because it would require that the plaintiff pursue both claims simultaneously in the same lawsuit, and ... if she elects to do it in two separate actions, she could very well end up with no recovery from the back surgery from either tort feasor, and that is not fair.  Obviously, if it is necessary and the defendants here win, and if it was necessary, then the verdict in the other suit stands and there's no problem with it.
>
> On the other hand, if in the other suit she elected to believe it was not necessary and therefore chose not to seek recovery from the original tort feasor for it, it is possible to end up with no recovery for the back surgery at all.

█ We are persuaded that the circuit court erred in denying that motion.[3]  In the Charles County case, appellee

---

3.  Summary Judgment is appropriate when there is no dispute as to any material fact and the party is entitled to judgment as a matter of law.

asserted that her bone fusion surgery was necessary. In the Prince George's County case, she asserted that this surgery was unnecessary. "Judicial estoppel, or the doctrine of inconsistent positions, precludes a party who assumed a certain position in a prior legal proceeding and who secured a judgment in his or her favor from assuming a contrary position in another action simply because his or her interests have changed.... The doctrine rests upon the principle that a litigant 'should not be permitted to lead a court to find a fact one way and then contend in another judicial proceeding that the same fact should be found otherwise.'" *City of New York v. Black Garter,* 179 Misc.2d 597, 685 N.Y.S.2d 606, 608–09 (1999) (*citing Ford Motor Credit Co. v. Colonial Funding Corp.,* 215 A.D.2d 435, 436, 626 N.Y.S.2d 527 (1995)). The purpose of the judicial estoppel doctrine was best laid out in *Kramer v. Globe Brewing Co.,* 175 Md. 461, 469, 2 A.2d 634 (1938), cited in *WinMark Ltd. Partnership v. Miles & Stockbridge,* 345 Md. 614, 620, 693 A.2d 824 (1997):

If parties in court were permitted to assume inconsistent positions in the trial of their cases, the usefulness of courts of justice would in most cases be paralyzed; the coercive process of the law, available only between those who consented to its exercise, could be set at naught by all. But the rights of all men, honest and dishonest, are in the keeping of the courts, and consistency of proceeding is therefore required of all those who come or are brought before them. It may accordingly be laid down as a broad proposition that one who, without mistake induced by the opposite party, has taken a particular position deliberately in the course of litigation, must act consistently with it; one cannot play fast and loose.

... [A] party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is

---

Md.Rule 2–501. The standard of appellate review "is whether the trial court was legally correct." *Saponari v. CSX Transp.,* Inc., 126 Md.App. 25, 37, 727 A.2d 396, *cert. denied,* 353 Md. 473, 727 A.2d 382 (1999) (internal citations omitted). On review, "an appellate court determines whether there was sufficient evidence to create a jury question." *Id.*

directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts and another will be prejudiced by his action.

*Wilson v. Stanbury,* 118 Md.App. 209, 214–15, 702 A.2d 436 (1997)(citing *Kramer, supra; WinMark, supra* ).[4]

Appellee's current assertion that her surgery was unnecessary is directly contrary to her prior assertion that the surgery was necessary. We recognize that pretrial notice of Ms. Thompson's "unnecessary surgery" defense placed appellee in a difficult position. As the Court of Appeals has pointed out, however, "[t]he difficulty presented where claims arise jointly against health care providers and non-health care providers is not insurmountable." *Weidig v. Crites,* 323 Md. 408, 418, 593 A.2d 1094 (1991). Upon discovery of the "unnecessary surgery" defense, appellee was required to consider a number of unpleasant choices. Those choices, however, have consequences. Appellee chose to argue in Charles County that her surgery was necessary. Consequently, she could not thereafter argue in Prince George's County that her surgery was unnecessary.

## II. Satisfaction of Appellee's Damages Claim

■ We are also persuaded that the circuit court erred in rejecting appellants' argument that appellee's claim had been

---

4. See also *Melton v. Anderson,* 32 Tenn.App. 335, 222 S.W.2d 666, 669 (Tenn.App.1948)(where a party "states on oath in former litigation, either in a pleading or in a deposition or on oral testimony, a given fact as true, he will not be permitted to deny that fact in subsequent litigation."); *Bubis v. Blackman,* 58 Tenn.App. 619, 435 S.W.2d 492 (Tenn.App.1968)(standing for the proposition that Tennessee courts will apply the doctrine of judicial estoppel to preclude parties from maintaining inconsistent positions in two lawsuits, without proof of deliberate misstatements of fact.); *Stearns Coal & Lumber Co. v. Jamestown R.R. Co.,* 141 Tenn. 203, 208 S.W. 334 (Tenn.1919)(distinction between judicial estoppels from inconsistent sworn statements (not requiring a showing of prejudice), and inconsistent legal positions.).

"satisfied." In *Morgan v. Cohen,* 309 Md. 304, 523 A.2d 1003 (1987), the Court of Appeals explained that the law of satisfaction operates as follows:

If releases given under the circumstances of these cases do not, as a matter of law, bar action against one in [appellee's] position, it follows that the satisfaction of a judgment against ... the original tortfeasor, in an action to which [appellee] was not a party, should have no greater effect. The policy implicated here is that against double recovery for the same harm.... But the policy against double recovery does not apply when a judgment against the original tortfeasor for the original tort only has been satisfied, at least when the subsequent tortfeasor has not been joined in that suit. *See* Restatement (Second) of Judgments § 50 (1982). Like the question of intent with respect to the ambiguous releases, we are presented with a question of fact: Did the satisfied judgment include damages for both torts, or just the original tort? *If the judgment in fact encompassed the former, [appellant's] claim against [appellee] is barred because she has received full compensation for all her injuries;* if it encompassed only the latter, her claim is not barred because she has been compensated only for the initial harm caused by [the defendant driver in the first case]. This is a question of fact for the trial court (emphasis added).

*Id.* at 320–21, 523 A.2d 1003. In this case, no reasonable trier of fact could find that appellee did not seek compensation for her surgery from the Charles County jury. Thus, the settlement of that case included "satisfaction" for her bone fusion surgery.

In *Brandt v. Eagle,* 412 Pa.Super. 171, 602 A.2d 1364 (1992), *appeal denied,* 532 Pa. 653, 615 A.2d 1310 (Pa.1992), the Superior Court of Pennsylvania held that "a plaintiff who has marked satisfied a judgment against one tort-feasor for less than the full amount of the judgment is barred from maintaining a second action against another tort-feasor for the same

harm." *Id.* at 172, 602 A.2d 1364.[5] That case involved a plaintiff who (1) was injured in a motor vehicle collision, (2) filed a lawsuit against the other driver, (3) filed a second lawsuit alleging medical malpractice in the treatment she received as a result of the auto accident, and (4) settled her claim against the defendant driver while the second suit was still pending.

According to the *Brandt* Court, although a plaintiff "may obtain a judgment against several tort-feasors for the same harm, he or she is entitled to only one satisfaction for that harm." 412 Pa.Super. at 176, 602 A.2d 1364. (Citing *Thompson v. Fox*, 326 Pa. 209, 192 A. 107 (1937); *Franklin Decorators, Inc. v. Kalson*, 330 Pa.Super. 140, 479 A.2d 3 (1984)). The rationale for this rule is that

> the remedy provided to an injured person is to receive only one full compensation for the wrong done to him.

*Id.* at 177, 602 A.2d 1364. Once the judgment is "marked satisfied,"

> the plaintiff is legally barred from further recovery against any of the tort-feasors because the law presumes that full satisfaction for the harm incurred has been received.

*Id. (citing Hilbert v. Roth*, 395 Pa. 270, 149 A.2d 648 (1959)).

> There are important policy reasons and much wisdom behind the traditional rule that a plaintiff who records a satisfaction of judgment must treat that satisfaction as his

---

5. See also *Pennington v. Bluefield Orthopedics, P.C.*, 187 W.Va. 344, 350, 419 S.E.2d 8 (W.Va.1992), where the Supreme Court of Appeals of West Virginia, stated: "... a setoff, or verdict credit, is appropriate in this case because the successive and independent tortfeasors were 'jointly responsible' for a single indivisible injury. 'Where such joint obligation for damages is found, a credit is allowed for any settlement prior to verdict ...' Our conclusion is consistent with the common law principle ... that 'an injured party may only have one fully recovery, and complete satisfaction from any tort-feasor is satisfaction of the total damages suffered.' " (Internal citations omitted).

or her commitment that the judgment has been fully satisfied.

*Id.* at 176, 602 A.2d 1364.

We are persuaded that the order of satisfaction filed in her Charles County case precluded appellant from thereafter obtaining an award of damages against appellants. While the amount of the auto negligence settlement may not have been "satisfactory" to appellee, when the damage claim that she had been asserting was "satisfied" as a matter of law, she was thereafter prohibited from recovering more funds for the same injuries. Having filed an order of satisfaction in the (auto negligence) Charles County case, appellee could not thereafter assert an "unnecessary surgery" claim in the Circuit Court for Prince George's County.

**JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEE.**