745 So.2d 946 (1999)
MUSCULOSKELETAL INSTITUTE CHARTERED, d/b/a/ Florida Orthopaedic Institute, Chester E. Sutterlin, III, M.D., Chester E. Sutterlin, III, M.D., P.A., and Gene A. Balis, M.D., Petitioners,
v.
James S. PARHAM, Respondent.
Nos. 91,966, 92,382 and 92,451.
Supreme Court of Florida.
March 11, 1999.
Rehearing Denied April 30, 1999.
Thomas M. Hoeler and Glenn M. Burton of Shear, Newman, Hahn & Rosenkranz, P.A., Tampa, Florida, for petitioner Musculoskeletal Institute Chartered, d/b/a Florida Orthopaedic Institute.
Martin B. Unger and Brian D. Stokes of Unger, Swartwood, Latham & Indest, Orlando, Florida, for petitioner Chester E. Sutterlin, III, M.D.
Clifford L. Somers of Somers & Associates, Tampa, Florida, for petitioner Gene A. Balis, M.D.
William J. Terry, Tampa, Florida, for Respondent.
PER CURIAM.
We have for review the decision in Parham v. Balis, 704 So.2d 623 (Fla. 2d DCA 1997). We accepted jurisdiction to answer the following question certified to be of great public importance:
DO THE EXTENSIONS OF THE STATUTE OF LIMITATIONS ALLOWED BY SECTIONS 766.104(2) AND 766.106(4), FLORIDA STATUTES (1989), ALSO EXTEND THE STATUTE OF REPOSE CONTAINED IN SECTION 95.11(4)( [b]), FLORIDA STATUTES (1989)?
Id. at 625. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We rephrase the certified question as follows:
WHETHER A MEDICAL MALPRACTICE ACTION IS "COMMENCED" WITHIN THE MEANING OF THE STATUTE OF REPOSE IN SECTION 95.11(4)(b), FLORIDA STATUTES (1989), WHEN THE PLAINTIFF PETITIONS FOR AN AUTOMATIC 90-DAY EXTENSION OF THE STATUTE OF LIMITATIONS UNDER SECTION 766.104(2), FLORIDA STATUTES (1989), IN ORDER TO *947 CONDUCT THE "REASONABLE INVESTIGATION" REQUIRED BY SECTION 766.104(1), FLORIDA STATUTES (1989), OR SERVES A NOTICE OF INTENT TO INITIATE LITIGATION PURSUANT TO SECTION 766.106(4), FLORIDA STATUTES (1989)?
For the reasons expressed below, we answer the rephrased certified question in the affirmative and approve the decision on review under the reasoning contained herein.

MATERIAL FACTS AND PROCEEDINGS BELOW
In the case below, the Second District considered whether the extensions of the medical malpractice statute of limitations provided for in sections 766.104(2) and 766.106(4), Florida Statutes (1989), likewise extend the four-year medical malpractice statute of repose residing in section 95.11(4)(b), Florida Statutes (1989). The following facts are taken from the court's opinion:
As a result of injuries sustained in a fall, Parham underwent a two-part surgical procedure which included a neck fusion using a pedicle screw. The procedures were performed by appellees Gene A. Balis, M.D., and Chester E. Sutterlin, III, M.D., who were employed by, or associated with, appellee Musculoskeletal Institute, Chartered, at the time of the surgery.
The surgical procedures took place on December 18, 1990, and January 29, 1991. Parham alleged that he discovered the negligence on December 17, 1993, when he was alerted to the hazards of pedicle screws by a television news documentary. On December 16, 1994, Parham filed a petition, pursuant to section 766.104(2), for an automatic 90-day extension of the two-year statute of limitations. On March 17, 1995, he served notice of his intent to initiate litigation pursuant to section 766.106, and on April 17, 1995, he served an amended notice adding Musculoskeletal Institute.
Parham filed an initial complaint for medical malpractice on July 20, 1995, and an amended complaint which added Dr. Sutterlin as a defendant on September 1, 1995. After considering a series of motions, the trial court eventually concluded that Parham's action was barred and dismissed the amended complaint with prejudice. In its order of dismissal, the trial court made the following pertinent rulings:
As noted earlier it is undisputed that the surgical procedure which forms the basis of this lawsuit occurred on January 29, 1991. Accordingly, on that date the Statute of Repose's time period commenced and the Plaintiffs were required to file their suit on or before January 29, 1995. It is also undisputed that suit was not filed as to Defendants, GENE A. BALIS, M.D. and MUSCULOSKELETAL INSTITUTE, CHARTERED, until July 20, 1995. Defendants CHESTER E. SUTTERLIN, III, M.D. and CHESTER E. SUTTERLIN, III, M.D., P.A., were not made parties until September 1, 1995, the date on which the Amended Complaint naming them was filed.
In a series of cases the Florida Supreme Court has rejected a number of different attempts to extend the repose time period. See, e.g., Carr v. Broward County, 541 So.2d 92 (Fla. 1989); University of Miami v. Bogorff, 583 So.2d 1000 (Fla. 1991); and, Kush v. Lloyd, 616 So.2d 415 (Fla. 1992). Accordingly, Plaintiffs' contention that the repose time period was extended or tolled by their petition pursuant to Florida Statutes § 766.104 or their service of a "Notice of Intent to Initiate Litigation" as required by Florida Statute § 766.106, cannot be sustained. The Court rejects the applicability of Moore v. Winter Haven Hospital, 579 So.2d 188 *948 (Fla. 2d DCA 1991) to the undisputed facts of this case.
Parham, 704 So.2d at 624-25.
On appeal, the district court first noted that the trial court was bound by the district court's earlier decision in Moore v. Winter Haven Hospital, 579 So.2d 188 (Fla. 2d DCA 1991), wherein it held that the four-year statute of repose was tolled by the service of a notice of intent to initiate medical malpractice litigation because "[t]he `statute of repose' is subsumed in the general term `statute of limitations' of section 95.11(4)." Parham, 704 So.2d at 625. Using that same rationale, the Second District then concluded that "the 90-day extension allowed by section 766.104(2) extends both the statute of limitation and the statute of repose." Id. The district court also commented that "as we explained in Wood [v. Fraser, 677 So.2d 15 (Fla. 2d DCA 1996)], we discern nothing in the holding of Kush which compels us to conclude that it overruled Moore." Id. Accordingly, the Second District reversed and remanded the trial court's order of dismissal. Nevertheless, because of the potential impact of its holding on other medical malpractice claims, the majority opinion certified to this Court the question referred to above as one of great public importance. Parham, 704 So.2d at 625.
Judge Fulmer concurred specially in result only. While agreeing with the majority that the trial court was bound by the district precedent in Moore, Judge Fulmer disagreed with the majority's conclusion that the medical malpractice statute of repose was extended by the relevant provisions in section 766.104 and 766.106. Parham, 704 So.2d at 625 (Fulmer, J., concurring). She articulated three primary objections to the majority's rationale based on her plain-language interpretation of the statutes, the differences between statutes of limitations and repose, and her reading of this Court's caselaw for the proposition that the time periods of each operate in isolation and independent of the other. Id.

LAW AND ANALYSIS
Resolution of this case will be determined by the interplay among sections 95.11(4)(b);[1] 766.104(2);[2] and 766.106(2),[3] Florida Statutes (1989), and the application of our prior caselaw construing various provisions of chapter 766. We begin by analyzing the constituent statutes of chapter 766, which comprise the legislature's statutory scheme for medical malpractice claims.

Statutory Interpretation
The statutory framework governing medical malpractice actions is both uncommonly complex and unique among other Florida statutory schemes.[4]See Kukral v. *949 Mekras, 679 So.2d 278, 280-81 (Fla. 1996) (detailing the numerous procedural requirements of chapter 766). Stringent presuit investigatory requirements are the hallmarks of this framework. Appended to this statutory scheme are the two-year statute of limitations and four-year statute of repose found in section 95.11(4)(b),[5] which at least one commentator has argued "protect health care providers in a way no other class of defendants is protected." Scott R. McMillen, The Medical Malpractice Statute of Limitations: Some Answers and Some Questions, Fla. B.J., Feb. 1996, at 44, 47.
At the outset, the legislature has made clear its intent regarding medical malpractice lawsuits. That intent and corresponding findings are expressed in section 766.201, Florida Statutes (1989), which provides as follows:
(1) The Legislature makes the following findings:
(a) Medical malpractice liability insurance premiums have increased dramatically in recent years, resulting in increased medical care costs for most patients and functional unavailability of malpractice insurance for some physicians.
(b) The primary cause of increased medical malpractice liability insurance premiums has been the substantial increase in loss payments to claimants caused by tremendous increases in the amounts of paid claims.
(c) The average cost of defending a medical malpractice claim has escalated in the past decade to the point where it has become imperative to control such cost in the interests of the public need for quality medical services.
(d) The high cost of medical malpractice claims in the state can be substantially alleviated by requiring early determination of the merit of claims, by providing for early arbitration of claims, thereby reducing delay and attorney's fees, and by imposing reasonable limitations on damages, while preserving the right of either party to have its case heard by a jury.
(e) The recovery of 100 percent of economic losses constitutes overcompensation because such recovery fails to recognize that such awards are not subject to taxes on economic damages.
(2) It is the intent of the Legislature to provide a plan for prompt resolution of medical negligence claims. Such plan shall consist of two separate components, presuit investigation and arbitration. Presuit investigation shall be mandatory and shall apply to all medical negligence claims and defenses. Arbitration shall be voluntary and shall be available except as specified.
(a) Presuit investigation shall include:

1. Verifiable requirements that reasonable investigation precede both malpractice claims and defenses in order to eliminate frivolous claims and defenses.

2. Medical corroboration procedures.

(b) Arbitration shall provide:
1. Substantial incentives for both claimants and defendants to submit their cases to binding arbitration, thus reducing *950 attorney's fees, litigation costs, and delay.
2. A conditional limitation on noneconomic damages where the defendant concedes willingness to pay economic damages and reasonable attorney's fees.
3. Limitations on the noneconomic damages components of large awards to provide increased predictability of outcome of the claims resolution process for insurer anticipated losses planning, and to facilitate early resolution of medical negligence claims.
(Emphasis added.) We have consistently recognized the legislative intent behind chapter 766. See, e.g., Kukral, 679 So.2d at 281.
As to each statute individually, we recently reiterated the purpose of the notice requirement found in section 766.106:
The statute was intended to address a legitimate legislative policy decision relating to medical malpractice and established a process intended to promote the settlement of meritorious claims at an early stage without the necessity of a full adversarial proceeding.
Kukral, 679 So.2d at 280 (quoting Williams v. Campagnulo, 588 So.2d 982, 983 (Fla. 1991)). The legislative intent behind the statute has been often cited by this and other Florida appellate courts. See Weinstock v. Groth, 629 So.2d 835, 838 (Fla. 1993) (observing that presuit requirements of chapter 766 are meant "to alleviate the high cost of medical malpractice claims through early determination and prompt resolution of claims"); Fort Walton Beach Medical Ctr., Inc. v. Dingler, 697 So.2d 575, 579 (Fla. 1st DCA 1997) (reaffirming purpose of chapter 766's presuit notice of intent as providing "the defendants notice of the incident in order to allow investigation of the matter and promote presuit settlement of the claim"); Stone v. Rosenthal, 665 So.2d 276, 277 (Fla. 4th DCA 1995) (explaining that purpose of 90-day notice period in section 766.106(4) "is to give a prospective defendant an opportunity to investigate the claim and avoid litigation by settling it"); Rhoades v. Southwest Florida Regional Medical Ctr., 554 So.2d 1188, 1190 (Fla. 2d DCA 1989) (concluding that medical malpractice statute "evidence[s] a clear legislative intent to discourage costly and time-consuming medical malpractice litigation, to promote the culling of meritless claims, and to encourage settlement of meritorious claims"). In conjunction with section 766.106, the "reasonable investigation" requirement of section 766.104 is another component of the statutory scheme which "obviously attempts to ensure good faith and limit frivolous filings." Nowling v. Walton Regional Hosp., 711 So.2d 631, 632 (Fla. 1st DCA), review denied, 719 So.2d 892 (Fla.), and review denied, 719 So.2d 894 (Fla. 1998).
Operating with obvious unity of purpose, sections 766.104 and 766.106 are concerned with deterring meritless claims and promoting early and fair settlements of meritorious claims. Kukral; Weinstock; Williams. Thus, these statutes serve to prevent the misuse and abuse of the civil justice system, while simultaneously encouraging expedited relief for those wronged by medical practitioners. For actions that proceed to trial, the statutes have the practical effect of ensuring that a solid evidentiary basis exists for bringing such claims. Therefore, it is fair to say that the investigation requirements permeate the constituent provisions of chapter 766 and are the driving force behind the numerous procedural hurdles that must be cleared before a claim can ever proceed to trial. See John A. Grant, Florida's Presuit Requirements for Medical Malpractice Actions, Fla. B.J., Feb. 1994, at 12, 12 ("The building material of these presuit requirements is investigation: virtually every extension of time, piece of correspondence, and affirmative step is driven by the investigation requirements.").
Consequently, no action under chapter 766 may "commence" by filing a complaint in the courts of Florida without compliance with these stringent statutory predicates. *951 The legislature has unambiguously dictated that "[n]o action shall be filed for personal injury or wrongful death arising out of medical negligence, whether in tort or contract, unless the attorney filing the action has made a reasonable investigation as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant." § 766.104(1), Fla. Stat. (1989) (emphasis added). After satisfying that prerequisite but prior to filing a medical malpractice claim, a potential claimant must still notify prospective defendants of his or her intent to initiate litigation for medical malpractice. § 766.106(2), Fla. Stat. (1989). During the ninety days after such notice is mailed to prospective defendants, the prospective claimant may not file suit, section 766.106(3)(a), and the statute of limitations is tolled as to all potential defendants. § 766.106(4), Fla. Stat. (1989). Therefore, under these statutory predicates, commencing an action in the circuit court is inextricably linked to the performance of a reasonable investigation under section 766.104(1) and other provisions of chapter 766,[6] the notification of prospective defendants under the provisions of section 766.106, and the accompanying tolling of the statute of the limitations so the prospective defendants may investigate the basis of the claim against them.
Juxtaposed against the investigation requirements of chapter 766 is the limitations period of section 95.11(4)(b), which includes the two-year statute of limitations and four-year statute of repose. The statute provides, in pertinent part:
An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued.
We have recognized that harsh results may follow from a mechanical application of this statute. Accordingly, we have construed the two-year statute of limitations as running from the time the claimant not only has knowledge of the injury, "but also knowledge that there is a reasonable possibility that the injury was caused by medical malpractice." Tanner v. Hartog, 618 So.2d 177, 181 (Fla. 1993) (footnote omitted). As to the statute of repose, we have acknowledged that because it "has the potential ... of barring a cause of action before it accrues, Florida has enacted few statutes of repose." Kush v. Lloyd, 616 So.2d 415, 421 (Fla. 1992). Nevertheless, we have not questioned the underlying legitimacy of the medical malpractice statute of repose, which we have characterized as "a legislative determination that there must be an outer limit beyond which medical malpractice suits may not be instituted," id. at 421, and, indeed, we have upheld its constitutionality. See Carr v. Broward County, 541 So.2d 92, 95 (Fla. 1989) (holding that section 95.11(4)(b) "was properly grounded on an announced public necessity and no less stringent measure would obviate the problems the legislature sought to address").
However, the case before us does not concern the efficacy of the medical malpractice statute of repose per se nor our construction of that statute in isolation. Rather, we are obligated to construe the statute of repose in conjunction with the statutory presuit requirements of chapter *952 766. The present issue arises because subsections 766.104(2) and 766.106(4) provide, respectively, an extension to and tolling of the statute of limitations within the statutory presuit and investigation framework, but are silent as to the statute of repose. This results in an inconsistency because section 95.11(4)(b) mandates that the statute of repose runs four years "from the date of the incident or occurrence out of which the cause of action accrued," but section 766.106 does not allow an action to be filed in court until a notice of intent to initiate litigation is served and the ninety-day period specified in the statute expires. See Fla. R. Civ. P. 1.650(d)(2) ("The action may not be filed against any defendant until 90 days after the notice of intent to initiate litigation was mailed to that party.").
We conclude that these statutes must be brought into symmetry so that the mandatory presuit screening and investigation requirements do not impede a claimant's access to the courts during the four years in which an action may be commenced in accord with the statute of repose. Otherwise, the presuit screening and investigation requirements would be in conflict with article I, section 21 of the Florida Constitution,[7] and thus be unconstitutional.
We reach this conclusion because on the one hand, the statute of repose in section 95.11(4)(b) cannot, in this context, be viewed in isolation; and, more importantly, we simply cannot ignore the unique presuit screening requirements embodied in the medical malpractice statutory framework. These requirements serve a laudable purpose and benefit prospective claimants, defendants, and the civil justice system alike. However, it would be an unconstitutional impediment to access to the courts if compliance with the statutory requirements in chapter 766 resulted in a potential claimant's suit being forever barred by the associated statute of repose. We therefore hold that solely for the purpose of the statute of repose, an action for medical malpractice is commenced with the service of a notice of intent to initiate litigation pursuant to section 766.106 or on petition to the clerk of the court filed pursuant to section 766.104(2) and that the tolling provisions of these statutes and Florida Rule of Civil Procedure 1.650(d) applicable to the statute of limitations are equally applicable to the statute of repose in section 95.11(4)(b).
We have not lacked guideposts in reaching our decision. Indeed, our decision is in accord with our repeated interpretations of this unique statutory framework so as to effectuate its intended salutary presuit investigation and screening of claims without unconstitutionally impeding a citizen's access to the courts guaranteed by article I, section 21 of the Florida Constitution. See, e.g., Kukral, 679 So.2d at 284; Patry v. Capps, 633 So.2d 9, 13 (Fla. 1994) (holding that strict compliance with statutory mode of service of notice of intent to initiate litigation per section 766.106(2) was not required); Weinstock, 629 So.2d at 838 (recognizing general rule that "restrictions on access to the courts must be construed in a manner that favors access"); Smith v. Department of Ins., 507 So.2d 1080, 1087-90 (Fla. 1987) (invalidating portion of statute capping all noneconomic damages as violative of article I, section 21, while upholding remaining portions of act). We are also mindful of our obligation to construe section 95.11(4)(b) and sections 766.104(2) and 106(4) in such a manner to give effect to each statute.[8]

*953 This Case
In this case, but for the "reasonable investigation" and "notice of intent to initiate litigation" requirements of chapter 766, Parham could have filed his complaint on December 16, 1994, the day he filed for the automatic ninety-day extension of the statute of limitations in order to comply with the "reasonable investigation" requirements. That filing was well within the repose period, which ended on January 29, 1995. Based on our holding above, Parham's suit is not barred by the medical malpractice statute of repose and, we believe, its continued litigation is consistent with the legislative intent expressed in section 766.201. However, we express no opinion as to the merit of Parham's claims against the petitioners.
Although not determinative in the case before us, we disapprove of the Second District's reading that a statute of limitations somehow "subsumes" a statute of repose because the two are mentioned together in the same statutory provision.[9]Parham, 704 So.2d at 625; Wood, 677 So.2d at 17; Moore, 579 So.2d at 190. If anything, the statute of repose is the preeminent actor within the statutory scheme because it sets the absolute parameters of any action, first pinpointing the triggering event, i.e., the date of the underlying incident, and then telegraphing the time certain when the action must be commenced or forever extinguished.
As a final note, we hasten to add that prospective plaintiffs still must pursue their claims in a timely manner if no presuit settlement is reached. Our decision today in no way shields potential plaintiffs from the running of the two-year statute of limitations in section 95.11(4)(b), if they sit on their rights after the tolling and extension provisions of chapter 766 have expired.

Florida Rule of Civil Procedure 1.650
In accord with our holding today, we sua sponte amend Florida Rule of Civil Procedure 1.650(d)(3). The amended portion of the rule reads as follows:
(3) To avoid being barred by the applicable statute of limitations, an action a *954 complaint must be filed within 60 days or within the remainder of the time of the statute of limitations after the notice of intent to initiate litigation was received, whichever is longer, after the earliest of the following. ...
The rule's new language is indicated by underscoring; the deleted language is stricken through. This amendment shall become effective immediately. Because of this substantial change to the rule by this Court, we direct that the amended rule be advertised in The Florida Bar News; we direct that the Civil Procedure Rules Committee of The Florida Bar review the rule for comment; and we direct that all interested persons submit comments regarding the rule within sixty days of publication.

Conclusion
In closing, we note one author's conclusion that "[t]he presuit investigation requirements have served their purpose, in that a much more thorough investigation is now made by both parties before medical malpractice litigation is undertaken." John A. Grant, Florida's Presuit Requirements for Medical Malpractice Actions, Fla. B.J., Feb. 1994, at 12, 18. If that observation is indeed correct, the statutory framework is operating in accordance with the legislative intent expressed in section 766.201. Thus, our decision today neither helps nor hurts potential defendants facing medical malpractice actions. In fact, it effects no substantive change to the requirements that potential plaintiffs must meet in order to prosecute their claims. Instead, our decision simply recognizes the unique procedural hurdles that must be cleared before a suit can be brought and construes the applicable time limitations in a manner consistent with the legislative intent undergirding the medical malpractice statutory scheme and the constitutional imperatives of article I, section 21. See Kukral, 679 So.2d at 284 (remarking that "[w]e agree with the proposition that the medical malpractice statutory scheme must be interpreted liberally so as not to unduly restrict a Florida citizen's access to the courts, while at the same time carrying out the legislative policy of screening out frivolous lawsuits and defenses").
Accordingly, we hold that a medical malpractice action is "commenced" for the purposes of the statute of repose in section 95.11(4)(b) when the prospective claimant files for the automatic ninety-day extension of the statute of limitations under section 766.104(2) in order to comply with the requirement to conduct a "reasonable investigation" of possible medical malpractice under section 766.106(1), or serves a notice of intent to initiate litigation pursuant to section 766.106(4). We further hold that the tolling provisions of these statutes and Florida Rule of Civil Procedure 1.650(d) applicable to the statute of limitations are equally applicable to the statute of repose in section 95.11(4)(b). Accordingly, we answer the rephrased certified question in the affirmative, approve the decision on review under the reasoning contained herein, and amend Florida Rule of Civil Procedure 1.650(d) as detailed above.
It is so ordered.
HARDING, C.J., SHAW, WELLS, ANSTEAD and PARIENTE, JJ., and KOGAN, Senior Justice, concur.
OVERTON, Senior Justice, dissents.
NOTES
[1] Section 95.11(4)(b) provides in part:

An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued.
[2] Section 766.104(2) provides:

Upon petition to the clerk of the court where the suit will be filed and payment to the clerk of a filing fee, not to exceed $25, established by the chief judge, an automatic 90-day extension of the statute of limitations shall be granted to allow the reasonable investigation required by subsection (1). This period shall be in addition to other tolling periods. No court order is required for the extension to be effective. The provisions of this subsection shall not be deemed to revive a cause of action on which the statute of limitations has run.
[3] Section 766.106(4) provides, in pertinent part:

The notice of intent to initiate litigation shall be served within the time limits set forth in s. 95.11. However, during the 90-day period, the statute of limitations is tolled as to all potential defendants.
[4] Very few statutory schemes require presuit notice by potential plaintiffs, much less the exacting preliminary steps mandated by chapter 766. Our research has uncovered only a handful of statutes carrying such requirements, including the presuit notice requirement of section 768.28, Florida Statutes (1997), involving the statutory waiver of sovereign immunity, see Kuper v. Perry, 718 So.2d 859 (Fla. 5th DCA 1998), and the statutory notice requirements in defamation actions under section 770.01, Florida Statutes (1997). See Mancini v. Personalized Air Conditioning & Heating, Inc., 702 So.2d 1376 (Fla. 4th DCA 1997).
[5] Of course, section 95.11(4)(b) also contains a seven-year statute of repose which is implicated when "it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the injury within the 4-year period." However, for purposes of this opinion, we will only consider the four-year repose period because no allegation of fraudulent concealment has been raised in this case.
[6] Section 766.201(2) provides that "[p]resuit investigation shall be mandatory and shall apply to all medical negligence claims and defenses." Likewise, section 766.203(2) provides that "[p]rior to issuing notification of intent to initiate medical malpractice litigation pursuant to s. 766.106, the claimant shall conduct an investigation to ascertain that there are reasonable grounds to believe that: (a) Any named defendant in the litigation was negligent in the care or treatment of the claimant; and (b) Such negligence resulted in injury to the claimant."
[7] "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." Art. I, § 21, Fla. Const.
[8] See Unruh v. State, 669 So.2d 242, 245 (Fla. 1996) (reasoning that "whenever possible `courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another'") (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla. 1992)).
[9] We similarly reject Parham's argument that the statute of repose is "subsumed" within the statute of limitation because the word "repose" is never mentioned. See Carr, 541 So.2d at 94 (noting that section 95.11(4)(b) prescribes a two-year statute of limitations, a four-year statute of repose, and a seven-year statute of repose where fraud is alleged). While Parham is certainly correct that the word "repose" is never used in the section, neither is the term used in other statutes of repose. For whatever reason, the legislature chose not to insert that legal term of art into the statutes. However, that does not mean those statutes lack the legal effect of statutes of repose. For example, section 95.051 is titled "[w]hen limitations tolled." Within the statute reside two separate statutes of repose, both reciting the same language: "In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action." § 95.051(1)(d),(h), Fla. Stat. (1997). Although using slightly different language, the legal effect of section 95.11(4)(b)'s statute of repose is the same: "however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued." In both instances, the mandatory language "must" or "shall" is used and a date certain for when the cause of action must be brought or forever extinguished is also made plain on the face of the statute. Moreover, within section 95.11 itself, the four-year statute of limitations for actions related to the design, planning, or construction of real property improvements carries with it a fifteen-year statute of repose, so indicated by the words, "In any event, the action must be commenced within 15 years. ..." § 95.11(3)(c), Fla. Stat. (1997).

Parham makes essentially the same argument when pointing out that the statute of repose is contained in chapter 95, titled "Limitations of Actions; Adverse Possession." Georgia's medical malpractice statute of repose is likewise contained in a chapter titled "Limitations of Actions." Ga.Code Ann. § 9-3-71 (1998). Section 9-3-71 also resembles section 95.11 in that both the statute of limitation and statute of repose are found there. Therefore, the use of such statutory titles and grouping of statutes of limitation and repose thereunder does not appear to be uncommon or indicative of any legislative intent that statutes of limitation "subsume" statutes of repose.