765 So.2d 229 (2000)
VIRGINIA INSURANCE RECIPROCAL, as subrogee of Scottish Rite Children's Medical Center, Inc., Appellant,
v.
Frank C. WALKER, Jr., M.D., and North Florida Pediatric Associates, P.A., Appellees.
No. 1D99-2426.
District Court of Appeal of Florida, First District.
August 1, 2000.
*230 Michael T. Callahan, Tallahassee, for Appellant.
Craig A. Dennis and William T. Jackson of Dennis & Bowman, P.A., Tallahassee, for Appellees.
PADOVANO, J.
The plaintiff, Virginia Insurance Reciprocal, appeals a final summary judgment on its claim for contribution against the defendants, Dr. Frank C. Walker and his professional association. The trial court determined that the plaintiffs compliance with the medical malpractice presuit screening procedure was unnecessary and therefore ineffective to toll the running of the statute of limitations for contribution claims. We conclude that the medical malpractice presuit screening requirements apply to an action for contribution based on the alleged medical negligence of a joint tortfeasor. Although such an action is one that is asserted by a health care provider and not by the injured party, it is, nonetheless, an action arising out of the rendering or failure to render medical care. Because the plaintiffs complaint was filed within the applicable time limit as tolled, the summary judgment for the defendants must be reversed.
The controversy between the parties in this case arose after the settlement of a medical malpractice claim by Ann and Robert Aumon against the Scottish Rite Children's Medical Center. The Aumons' claim involved the care and treatment of their daughter, Emily, who was admitted to the Scottish Rite Medical Center in Atlanta on June 4, 1991, the day after she was born. Emily was a patient at Scottish Rite for ten days and, after her discharge, she came with her family to Tallahassee where she was treated by the defendant, Dr. Frank C. Walker.
The Aumons continued to take Emily to Dr. Walker for eleven months until they obtained a second opinion regarding the nature of her medical problem. On May 15, 1992, Dr. Larry Deeb diagnosed Emily with a condition known as congenital hypothyroidism. This condition can be detected by routine metabolic testing and it can be treated effectively if the diagnosis is made soon after birth. However, the testing required to diagnose hypothyroidism was not done by the physicians at Scottish Rite or by Dr. Walker.
Following Dr. Deeb's diagnosis, the Aumons filed a medical malpractice suit against Scottish Rite in Georgia. They alleged that the hospital physicians' failure to properly diagnose Emily's condition left her with permanent physical impairments and mental retardation. Virginia Insurance Reciprocal, the insurance carrier for Scottish Rite, settled with the Aumons for $1.65 million on June 11, 1997, and then prepared to assert a contribution claim against Dr. Walker.
The contribution claim by the plaintiff, Virginia Insurance Reciprocal, was to be based on an allegation that Dr. Walker was also negligent in failing to diagnose Emily's condition and that his negligence was partly the cause of the loss for which the plaintiff had compensated the Aumons. Because the contribution claim was founded on a claim of medical malpractice, the *231 plaintiff complied with the medical malpractice presuit screening requirements of sections 766.104 and 766.203, Florida Statutes. On May 14, 1998, the plaintiff filed a notice of intent to initiate litigation. The claim was not resolved in the screening process, so the plaintiff filed a complaint in the circuit court against the defendants, Dr. Walker and his professional association. The complaint was filed on November 13, 1998, within the sixty-day tolling period set by section 766.106(4), Florida Statutes.
The defendants filed an answer and moved for summary judgment on the ground that the contribution claim was barred by the statute of limitations. The plaintiff did not dispute the fact that the complaint had been filed more than one calendar year after it had settled the claim on behalf of Scottish Rite. However, the plaintiff argued that the statute of limitations was tolled during the presuit screening procedure and that the complaint was timely when this period is accounted for in computing the one-year period. In response, the defendants maintained that the presuit screening requirements are inapplicable to contribution claims and, consequently, the effort to comply in the present case had no effect on the statute of limitations.
The trial court concluded that the statute of limitations had not been tolled during the period in which the plaintiff was attempting to comply with the presuit screening procedure and therefore held that the complaint was untimely. This conclusion was based on the precedent established by the Fourth District Court of Appeal in Wendel v. Hauser, 726 So.2d 378 (Fla. 4th DCA 1999). The trial court acknowledged the possibility that Wendel might not be a correct statement of the law, but concluded that it was binding nevertheless. The court rendered a final summary judgment for the defendants, and the plaintiff then filed this appeal to review the judgment.
We begin with the standard of review of summary judgments, which has two steps. First, the appellate court must determine whether there was a genuine issue of material fact on the claim or defense adjudicated by summary judgment. In deciding this issue, the court must view every inference in favor of the party against whom the summary judgment was rendered. See Wills v. Sears, Roebuck & Co., 351 So.2d 29 (Fla.1977); Smith v. Perry, 635 So.2d 1019 (Fla. 1st DCA 1994); Williams v. Bevis, 509 So.2d 1304 (Fla. 1st DCA 1987). The second question is a pure question of law. Assuming there is no dispute of fact, the appellate court must determine whether the trial court was correct in holding that the moving party was entitled to a judgment as a matter of law. See Menendez v. Palms West Condominium Ass'n, Inc., 736 So.2d 58 (Fla. 1st DCA 1999). Because the motion for summary judgment in this case turns on the application of a point of law concerning the statute of limitations, we review the decision of the trial court by the de novo standard of review.
To properly address the issue on appeal we must first consider a few basic principles of the law of contribution. With limited exceptions, the right of contribution was not recognized at common law. See Chiang v. Wildcat Groves, Inc., 703 So.2d 1083 (Fla. 2d DCA 1997); Hyster Co. v. David, 612 So.2d 678 (Fla. 1st DCA 1993). In 1975, the Florida Legislature adopted the Uniform Contribution Among Tortfeasors Act, which provides in material part that "[t]he right of contribution exists only in favor of a tortfeasor who has paid more than her or his pro rata share of the common liability." See § 768.31(2)(b). Fla. Stat. A party may now initiate a claim for contribution, even though a judgment has not yet been entered against the joint tortfeasor. See § 768.31(2)(a), Fla. Stat. (1997).
Section 768.31(4), Florida Statutes provides that a complaint for contribution must be filed within one year of the date of *232 the settlement in which the claimant has agreed to make payment on the common liability. However, this statute does not always control the timeliness of a contribution action. For example, in State v. Echeverri, 736 So.2d 791 (Fla. 3d DCA 1999), the court held that a contribution action based on an alleged defective design in construction was barred by the statute of repose for actions founded on the design or construction of buildings, even though the action was timely under the statute of limitations for contribution actions. Likewise, in Showell Industries, Inc. v. Holmes County, 409 So.2d 78 (Fla. 1st DCA 1982), this court held that the three-year statute of limitations for negligence claims against the state applied in place of the one-year statute of limitations for contribution claims. In these cases, the courts recognized that the substantive laws governing the underlying cause of action may take precedence over the laws that apply to contribution actions.
Although the Uniform Contribution Among Tortfeasors Act creates a remedy, the remedy is one that is available only if there is an independent basis to assert a claim that the joint tortfeasor is liable for a share of the loss. For example, a party who seeks contribution based on a claim that the negligence of another joint tortfeasor contributed to the loss must prove that the other tortfeasor was negligent. See West Am. Ins. Co. v. Yellow Cab Co. of Orlando, Inc., 495 So.2d 204 (Fla. 5th DCA 1986). In the present case, the plaintiffs claimed that the loss for which they had compensated the injured party was partly caused by the medical malpractice of the defendants.
As a prerequisite to filing a suit for medical malpractice, the prospective claimant must conduct a presuit investigation and serve notice of intent to initiate litigation on all potential defendants. See § 766.106(2), Fla. Stat. (1997). The suit may not be filed for a period of ninety days after the date of service of the notice. See § 766.106(3)(a), Fla. Stat. (1997). During this period of time, the parties have an opportunity to evaluate the relative merits of the claims and defenses and to either settle the claim or refer it to arbitration. One critical aspect of the legislative scheme is that timely compliance with the presuit process tolls the statute of limitations. See § 766.106(4), Fla. Stat. (1997); Musculoskeletal Inst. Chartered v. Parham, 745 So.2d 946 (Fla.1999). The general objective of the presuit screening procedure is to reduce medical costs by eliminating frivolous malpractice claims and affording a prompt and efficient method of resolving disputes regarding medical care. See Weinstock v. Groth, 629 So.2d 835 (Fla.1993).
We conclude that the statutory presuit screening requirements apply to an action for contribution that is based on a claim of medical malpractice. By the terms of section 766.203(1), all claims of medical malpractice are subject to the mandatory presuit screening procedure. Section 766.106(1)(a) defines a claim for medical malpractice as "a claim arising out of the rendering of, or the failure to render, medical care or services." This definition makes no distinction between a medical malpractice claim that is asserted directly by the injured party and a medical malpractice claim that is asserted by a joint tortfeasor seeking to recover a share of the loss. Nor would there be any good reason to make such a distinction. The policy considerations underlying the presuit screening procedure are the same in either case.
It is true that the claim against the defendants was asserted in a suit for contribution, but that fact reveals more about the alignment of the parties than it does about the nature of the underlying action. Contribution was merely the procedural mechanism for asserting the claim. To prevail in their suit for contribution, the plaintiffs would have to prove that the defendants were guilty of medical negligence. See Beaches Hosp. v. Lee, 384 So.2d 234 (Fla. 1st DCA 1980). The theory *233 of the plaintiff's claim was that the defendants had also committed medical malpractice and that they should be required to share in the loss. It follows that the claim, though asserted in a suit for contribution, is "a claim arising out of the rendering of, or the failure to render, medical care or services." § 766.106(1)(a), Fla. Stat. (1997).
We acknowledge that the decision of the Fourth District Court of Appeal in Wendel v. Hauser supports the defendants' argument and that the trial court was correct in relying on it. Unless there are conflicting decisions in the district courts of appeal, a district court decision is binding on all of the trial courts in Florida. See Pardo v. State, 596 So.2d 665 (Fla. 1992). Hence, the decision of the Fourth District in Wendel was binding on the trial court in the Second Circuit. However, the decision does not have the same binding effect in this court. The appellate courts may disagree with each other on a point of law. In this case, we respectfully disagree with the decision of the Fourth District in Wendel.
The better view was expressed in the earlier opinion of the Fourth District Court of Appeal in Walt Disney World Co. v. Memorial Hospital, 363 So.2d 598 (Fla. 4th DCA 1978). There the court affirmed the dismissal of a contribution claim because the plaintiff had not pursued the medical malpractice presuit screening requirements. The court explained its decision as follows:
[w]e cannot accept appellant's argument that because the claim is based on a contribution statute, it does not fit within the medical malpractice mediation requirements. The claim is clearly one for medical malpractice. Unless some portion of the plaintiff's damages is due to fault of the hospital, there will be no contribution between the third party defendant and third party plaintiff. We stress that the mediation required here is not the mediation of the contribution claim but is instead the mediation required of the issue of actionable negligence.
Id. at 599-600. See also Davis v. Acton, 373 So.2d 952 (Fla. 3d DCA 1979). Here, as in Walt Disney World, the point of the presuit screening procedure would not be to resolve an issue of contribution, but rather to resolve the underlying claim of medical malpractice.
The Fourth District reversed its course in Wendel, primarily because the statute had changed since its decision in Walt Disney World. When Walt Disney World was decided, the operative statute provided that "[a]ny person or his representative claiming damage by reason of injury, death, or monetary loss, on account of alleged malpractice ... shall submit such claim ..." See § 768.44(1)(a), Fla. Stat. (1975). The phrase "monetary loss" was not carried forward in section 766.106, the current version of the statute. This prompted the court to conclude in Wendel that the presuit screening requirements are no longer applicable to contribution claims.
However, the scope of the statute does not appear to have been changed by the deletion of the phrase "monetary loss." This phrase could not have been meant as an exclusive reference to contribution claims even in the earlier version of the statute. Every complaint for medical malpractice will necessarily involve a monetary loss, whether by an injured party who is forced to pay for medical bills or by a joint tortfeasor who has settled for more than his or her fair share of the loss. The statute was simply reworded. If anything, we think the current statute applies more clearly to contribution claims. Section 766.106(1)(a) defines a claim for medical malpractice as a claim arising out of the rendering of medical care or services. When a contribution claim is based on the alleged medical malpractice of a joint tortfeasor, the claim is one that necessarily arises out of the rendering of medical care or services.
*234 To the extent that there may be some significance to the deletion of the phrase "monetary loss" from the statute outlining the medical malpractice screening requirements, we note that it is still contained in section 95.11, Florida Statutes, the general statute of limitations for medical malpractice actions. Section 95.11(4)(b), Florida Statutes states, "An `action for medical malpractice' is defined as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnosis, treatment, or care by any provider of health care." When section 95.11 and 766.106 are read together, the definition of medical malpractice is broader, not narrower, than the definition in the former statute, section 768.44(1)(a).
The courts in other jurisdictions are divided on the question whether medical malpractice statutes prevail over conflicting statutes governing contribution claims. Some states have held that complaints for contribution based on medical negligence are not subject to the statutory requirements that would otherwise apply to an initial complaint for medical negligence. See White v. Brookdale Hosp. Med. Ctr., 142 Misc.2d 234, 536 N.Y.S.2d 963 (N.Y.Sup.Ct.1989); Rowland v. Skaggs Companies, Inc., 666 S.W.2d 770 (Mo. 1984). These opinions are predicated on the theory that contribution is an independent cause of action.
In contrast, other states have held that a contribution action based on medical negligence is subject to the statutory requirements governing medical negligence claims. These decisions typically proceed on the theory that the contribution claim is essentially a cause of action for medical negligence. See Adler v. Hyman, 334 Md. 568, 640 A.2d 1100 (1994) (holding that a party asserting a contribution claim based on medical negligence must comply with the statutory requirements for presuit arbitration of medical negligence claims); see also Krasaeath v. Parker, 212 Ga.App. 525. 441 S.E.2d 868 (1994); Hayes v. Mercy Hosp. & Med. Ctr., 136 Ill.2d 450, 145 Ill.Dec. 894, 557 N.E.2d 873 (1990); Heneghan v. Sekula, 181 Ill.App.3d 238, 129 Ill.Dec. 913, 536 N.E.2d 963 (1st Dist.1989) (holding that the medical malpractice statute of repose prevails over the statute of limitations for contribution claims).
We think the better approach is to determine the applicable limitation period based on the nature of the underlying cause of action, not by the form of the complaint in which the cause of action has been asserted. The Illinois Supreme Court made this point succinctly in Hayes when it said that the "basis for a contributor's obligation rests on his liability in tort to the injured party." 145 Ill.Dec. 894, 557 N.E.2d at 876. Following the same theme, the Georgia Court of Appeals reasoned in Krasaeath, that "[a]lthough the [medical malpractice] claim is couched as one for contribution, and but for the statute of repose would have been timely, substance prevails over form." 441 S.E.2d at 870. We agree with the reasoning in these opinions. A claim for medical malpractice does not change its character merely because it is asserted by another medical care provider who is also at fault.
It would be illogical to conclude that the presuit screening requirements apply if a doctor is initially accused of medical malpractice by the injured party, but not if the doctor is later accused of medical malpractice in a suit for contribution. In either case the doctor will be facing a charge of medical malpractice and should be entitled to the protection afforded by the presuit screening procedure. As the Maryland Court of Appeals explained in Adler:
The purpose of the Act would not be served by restricting arbitration of claims for contribution to those asserted as part of the same litigation that includes the claim by the individual who directly suffered a personal injury. The purpose of the Act is to screen malpractice claims, ferret out meritless ones, and in theory, thereby lower the cost of malpractice insurance and the overall *235 costs of health care. It would be an unreasonable construction of the Act, and inconsistent with its purpose, to hold that the medical malpractice insurance carrier for a health care provider in the position of Dr. Hyman [the defendant in the contribution action] would defend in arbitration if the pleading seeking contribution is a third-party complaint, but that that same insurer would not have a right to insist on the assumed benefit of arbitration if the pleading asserting the claim for contribution is an original complaint in an independent action, after termination of the underlying claim.
640 A.2d at 1103 (citation omitted). Here, as in Adler, there is no reasonable basis to distinguish between a medical malpractice claim made in the original lawsuit and a medical malpractice claim made in a subsequent complaint for contribution.
Our decision in this case applies only to a contribution claim that is asserted before a determination of joint liability. A contribution claim would not be subject to the medical malpractice presuit screening requirements if the liability of the alleged joint tortfeasor had already been determined and the plaintiff in the contribution action was merely attempting to obtain a judgment against that party. In Baptist Hospital of Miami, Inc. v. Abaunza, 563 So.2d 174 (Fla. 3d DCA 1990), the court held that a party did not have to meet the presuit investigation requirements of Chapter 766 before filing its contribution action, because both parties to the contribution action had already been found liable for medical negligence. The court reasoned that:
The statutory procedures are intended to be applied preliminary to a determination of liability. Where there has been a determination of liability on the professional negligence claim, an action for contribution is not properly deemed to be within the statutory definition of sections 766.104 and 766.106.
563 So.2d at 175 (citation omitted). The present case is distinguishable in that the plaintiff was attempting to establish the defendant's liability for medical malpractice in the contribution suit.
For these reasons, we hold that the time for filing a suit for contribution based on a claim of medical malpractice is tolled by compliance with the statutory presuit screening requirements, and we certify that our decision is in conflict with the decision of the Fourth District Court of Appeal in Wendel. The complaint in the present case was filed within the applicable time period as tolled. Therefore, the complaint is not barred by the statute of limitations, and the defendants are not entitled to a summary judgment on that ground.
Reversed.
DAVIS and BENTON, JJ., Concur.