842 So.2d 804 (2003)
Frank C. WALKER, Jr., etc., et al., Petitioners,
v.
VIRGINIA INSURANCE RECIPROCAL, etc., et al., Respondents.
No. SC00-1710.
Supreme Court of Florida.
March 20, 2003.
*805 Craig A. Dennis and William T. Jackson of Dennis & Bowman, P.A., Tallahassee, FL, for Petitioners.
Michael T. Callahan of Callahan & Martinez, Saint Petersburg, FL, for Respondents.
QUINCE, J.
We have for review the decision in Virginia Insurance Reciprocal v. Walker, 765 So.2d 229 (Fla. 1st DCA 2000), which certified conflict with the decision in Wendel v. Hauser, 726 So.2d 378 (Fla. 4th DCA 1999). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons expressed below, we approve the decision of the First District Court of Appeal in Virginia Insurance Reciprocal.

FACTUAL AND PROCEDURAL BACKGROUND
Emily Aumon was transferred to Scottish Rite Children's Medical Center, Inc., in Atlanta, Georgia, on June 4, 1991, the day after she was born. After Emily was discharged from Scottish Rite on June 14, 1991, Dr. Frank C. Walker assumed Emily's care in Tallahassee, Florida. Approximately eleven months later, Emily's parents, Ann and Robert Aumon, sought a second opinion from Dr. Larry Deeb, who diagnosed Emily with a condition known as congenital hypothyroidism. This condition can be detected by routine metabolic testing and can be treated effectively if the diagnosis is made soon after birth. However, neither the physicians at Scottish Rite Children's Medical Center nor Dr. Walker conducted the testing required to diagnose hypothyroidism.
Following Dr. Deeb's diagnosis, the Aumons filed a medical malpractice suit against Scottish Rite and the physicians who treated Emily in Georgia, alleging that Emily was injured because of their failure to test her for hypothyroidism. The Aumons claimed Scottish Rite failed to test Emily for hypothyroidism within one week of her birth as required by Georgia public health laws and failed to determine if the hospital where she was born had done so. The suit further alleged that *806 this failure to diagnose Emily's condition left her with permanent physical impairments and mental retardation.
Virginia Insurance Reciprocal, Inc. (Virginia Insurance), Scottish Rite's insurer, settled with the Aumons for $1.65 million on June 11, 1997. Virginia Insurance also prepared to assert a contribution claim against Dr. Walker (Walker) and his professional association, on the grounds that Walker had also negligently failed to diagnose Emily's condition and this negligence was the partial cause of the loss for which Virginia Insurance had compensated the Aumons. Because the contribution claim was based on a claim of medical malpractice, Virginia Insurance complied with the medical malpractice presuit screening requirements of sections 766.104[1] and 766.203,[2] Florida Statutes (1997).
On May 14, 1998, Virginia Insurance served an "intent to litigate" against Walker, as provided in section 766.106(2), Florida Statutes (Supp.1998).[3] When the claim was not resolved during the presuit screening process, Virginia Insurance filed a complaint for contribution against Walker in circuit court on November 13, 1998, contending it was entitled to contribution because it had paid more than its pro rata share of the common liability of those released in the underlying suit. See § 768.31(2), Fla. Stat. (1997). Walker answered the complaint by denying the allegations and moving for summary judgment on the ground that Virginia Insurance's contribution claim was barred by the statute of limitations in section 768.31(4). Virginia Insurance did not dispute that the complaint had been filed more than one calendar year after it had settled the claim on behalf of Scottish Rite, but argued that the statute of limitations was tolled during the presuit screening procedure and thus *807 the complaint was timely filed. Walker responded that the presuit screening requirements were inapplicable to contribution claims and thus any effort to comply with the requirements had no effect on the statute of limitations in this case.
The circuit court granted Walker's motion for summary judgment, concluding that the statute of limitations in section 768.31(4)(d) had not been tolled during the time that Virginia Insurance was attempting to comply with the presuit screening procedure in section 766.106 and thus the complaint for contribution was not timely. The circuit court based its ruling on the decision in Wendel v. Hauser, 726 So.2d 378 (Fla. 4th DCA 1999). On appeal, the First District disagreed with the Fourth District's reasoning in Wendel, reversed the summary judgment, and certified conflict with the decision in Wendel.
In Wendel, the Fourth District concluded that the plain language of section 766.106, which defines those claims subject to the presuit screening procedure, does not encompass claims for contribution. 726 So.2d at 380. Thus, the Fourth District held that "the presuit screening procedures initiated by [the plaintiff] did not toll the time for filing [the] action for contribution." Id. The Fourth District also rejected the plaintiff's argument that the district court's previous decision in Walt Disney World Co. v. Memorial Hospital, 363 So.2d 598 (Fla. 4th DCA 1978), also applied to the presuit screening process in chapter 766, Florida Statutes. In Walt Disney, the Fourth District concluded that Disney World's claim for contribution against Memorial Hospital was subject to the medical malpractice mediation requirements. Id. at 599-600. In Wendel, however, the Fourth District concluded that section 766.106 "more narrowly defines those claims subject to presuit screening procedures than did its predecessor [statute which was at issue in Walt Disney]." Wendel, 726 So.2d at 380.
This Court accepted review to resolve the conflict between Wendel and Virginia Insurance Reciprocal on this issue.

DISCUSSION
The conflict issue involves the intersection of statutory provisions of the Uniform Contribution Among Tortfeasors Act and the Florida Medical Malpractice Act when an action for contribution is based on medical malpractice. Section 768.31, the Uniform Contribution Among Tortfeasors Act, governs the procedure to be followed by petitioners who file contribution claims based on an injury to person or property or a wrongful death. Section 768.31(4)(d)2 specifically provides that an action for contribution is barred unless the tortfeasor seeking contribution commences the action for contribution within one year after paying an agreement for liability. Chapter 766 sets out a complex presuit investigation procedure that both the claimant and the defendant must follow before a medical negligence claim may be brought in court. The Legislature has unambiguously dictated:
No action shall be filed for personal injury or wrongful death arising out of medical negligence, whether in tort or contract, unless the attorney filing the action has made a reasonable investigation as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant.
§ 766.104(1), Fla. Stat. (1997). Even after satisfying this prerequisite, a potential claimant must follow the procedures outlined in section 766.106, Florida Statutes (Supp.1998), before filing a medical malpractice action. Section 766.106(2) requires notice to all prospective defendants *808 of the claimant's intent to initiate litigation for medical malpractice; section 766.106(3) provides that the suit may not be filed for ninety days after this notice is mailed to the prospective defendants; and section 766.106(4) tolls the statute of limitations during this ninety-day period as to all potential defendants.[4] The certified conflict requires us to determine which statutory provision controls when there is a question concerning the applicable statute of limitations for a contribution action based on an underlying medical malpractice claim. More specifically, we must determine whether the one-year statute of limitations outlined in section 768.31(4)(d)2 relating to contribution actions was tolled during compliance with the presuit screening procedure in chapter 766. In order to make this determination, we must first examine the legislative intent in enacting these provisions.
Legislative intent must be determined primarily from the language of the statute. See Aetna Cas. & Sur. Co. v. Huntington Nat'l Bank, 609 So.2d 1315, 1317 (Fla.1992). Section 766.106(1)(a), which outlines the presuit procedures for medical malpractice actions, defines a claim for medical malpractice as "a claim arising out of the rendering of, or the failure to render, medical care or services." Section 768.31(2)(a) provides that a right to contribution occurs where "two or more persons become jointly or severally liable in tort for the same injury to person or property, or for the same wrongful death." Further, "there is a right of contribution among [the tortfeasors] even though judgment has not been recovered against all or any of them." Id. While neither statute explicitly references the other, the language of each statute implicitly refers to the other. For instance, the "injury" referred to in section 768.31(2)(a) can arise in any number of tortious contexts, including medical malpractice. See, e.g., Florida Patient's Comp. Fund v. St. Paul Fire & Marine Ins. Co., 559 So.2d 195 (Fla.1990) (involving an action for contribution and subrogation brought by an insurer against its insured's employer and the employer's insurer after settlement of a medical malpractice action); Canal Ins. Co. v. Insurance Co. of North America, 424 So.2d 749 (Fla.1982) (involving an action for contribution by an insurer against a predecessor insurer that did not file a policy expiration); Florida Farm Bureau Ins. Co. v. Government Employees Ins. Co., 387 So.2d 932 (Fla.1980) (involving an action for contribution by a vehicle passenger against the driver and his insurer).
Likewise, the phrase "claim for medical malpractice" in section 766.106(1)(a) necessarily includes contribution claims based on medical malpractice because such a contribution claim would "aris[e] out of the rendering of, or the failure to render, medical care." Moreover, in order to properly proceed under the Uniform Contribution Among Tortfeasors Act, a contribution claimant raising an issue related to medical malpractice must establish that the tortfeasor does in fact share a portion of liability for the injury. See § 768.31(2), Fla. Stat. (1997); see also Chiang v. Wildcat Groves, Inc., 703 So.2d 1083, 1087 (Fla. 2d DCA 1997) (stating that it is "well-settled Florida law that to support an action for contribution under section 768.31(2)(a), the pleading must allege common liability"). In those instances where the tortious conduct involves medical malpractice, the common liability would have to be established by following *809 the presuit screening procedure mandated by chapter 766. Cf. Musculoskeletal Inst. Chartered v. Parham, 745 So.2d 946, 950 (Fla.1999) ("[T]he investigation requirements permeate the constituent provisions of chapter 766 and are the driving force behind the numerous procedural hurdles that must be cleared before a claim can ever proceed to trial."). In cases of medical malpractice, the two statutes are inextricably linked and must be read together to fulfill the legislative intent of each.
One of the primary goals of the Uniform Contribution Among Tortfeasors Act is to encourage settlement. See St. Paul Fire & Marine Ins. Co. v. Shure, 647 So.2d 877, 880-81 (Fla. 4th DCA 1994). The Medical Malpractice Act also "expressly sets forth the Legislature's intent to provide a mechanism for the prompt resolution of medical malpractice claims through mandatory presuit investigation and voluntary binding arbitration of damages." St. Mary's Hospital, Inc. v. Phillipe, 769 So.2d 961, 969-70 (Fla.2000); see also § 766.201(2), Fla. Stat. (1997) ("It is the intent of the Legislature to provide a plan for prompt resolution of medical negligence claims."). Thus, the legislative intent of both statutes is to avoid lengthy litigation of claims and the associated costs of such litigation. See, e.g., Kukral v. Mekras, 679 So.2d 278, 280 (Fla.1996) (explaining that the notice requirement in section 766.106(2) "established a process intended to promote the settlement of meritorious claims at an early stage without the necessity of a full adversarial proceeding").
If there has been "no judgment for the injury or wrongful death against the tortfeasors seeking contribution," the Uniform Contribution Among Tortfeasors Act bars the tortfeasor's right of contribution "unless she or he has ... [a]greed, while action is pending against her or him, to discharge the common liability and has within 1 year after the agreement paid the liability and commenced her or his action for contribution." § 768.31(4)(d)2, Fla. Stat. (1997). While medical malpractice claims are not specifically mentioned in this provision, the common liability required by section 768.31(4)(d) must be established pursuant to the Medical Malpractice Act where the contribution action is based on medical malpractice. The Medical Malpractice Act specifically requires presuit investigation of medical negligence claims and applies to "all medical negligence ... claims and defenses." § 766.203(1), Fla. Stat. (1997) (emphasis added). This statute further provides that prior to issuing notification of intent to initiate medical malpractice litigation pursuant to section 766.106, a claimant must "conduct an investigation to ascertain that there are reasonable grounds to believe" that the defendant was negligent in the care or treatment of the claimant and that this negligence resulted in injury to the claimant. § 766.203(2), Fla. Stat. (1997). Thus, prior to instituting any action relating to medical malpractice a claimant must determine whether there is a "reasonable ground to believe" that the putative tortfeasor is in fact liable. Because the Legislature did not specifically exclude contribution actions from the purview of this statutory requirement or the other presuit procedures outlined in chapter 766, we conclude that the presuit procedures apply to contribution actions which are based on medical malpractice.
As the First District noted, case law from other states supports this interpretation of the Florida statutes. See, e.g., Krasaeath v. Parker, 212 Ga.App. 525, 441 S.E.2d 868, 870 (1994) (holding that contribution action based on medical malpractice could be brought as separate independent suit, but was governed by five-year statute *810 of repose for medical malpractice cases and not twenty-year statute of limitation for contribution because recovery was predicated on proof of doctor's professional negligence); Hayes v. Mercy Hosp. & Medical Ctr., 136 Ill.2d 450, 145 Ill.Dec. 894, 557 N.E.2d 873, 876 (1990) (concluding that action for contribution against physician for injuries arising out of patient care is "action for damages" under medical malpractice statute of repose and subject to four-year statute of repose in medical malpractice statute); Adler v. Hyman, 334 Md. 568, 640 A.2d 1100, 1102 (1994) (concluding that insurer's action for contribution after settlement of medical malpractice claim was subject to arbitration under the provisions of Maryland's Health Care Malpractice Claims Act, in spite of insurer's argument that its claim arose from the settlement payment and not from the alleged malpractice). In each of these cases from other jurisdictions, the courts determined that an action for contribution which is based on medical malpractice is subject to the statutory provisions governing medical malpractice claims.[5] Although the statutes governing contribution claims may delineate certain time limits in which claims must be brought, those limits may be superseded or supplanted by time provisions in the statutes governing the underlying basis of the contribution claim. See, e.g., Hayes, 145 Ill.Dec. 894, 557 N.E.2d at 877 (concluding that medical malpractice statute of repose governs actions for contribution for injuries arising out of patient care because the suit for contribution "exposes insurance companies to the same liability as if the patient [had] brought a direct action against the insured").
As provided in section 766.106(3)(a), a medical malpractice claimant may not file suit for a period of ninety days after notice of intent to initiate litigation is mailed to the prospective defendants. During this time period, the insurer must conduct a review to determine the liability of the defendant. § 766.106(3)(a). By the end of this ninety-day period, if not before, the insurer must either reject the claim, make a settlement offer, or make an offer to admit liability and submit to arbitration on the issue of damages. § 766.106(3)(b). "[T]he purpose of the[se] chapter 766 presuit requirements is to alleviate the high cost of medical negligence claims through early determination and prompt resolution of claims...." Weinstock v. Groth, 629 So.2d 835, 838 (Fla. 1993). We agree with the First District that these policy considerations apply equally to medical malpractice claims asserted directly by an injured party and those asserted by a joint tortfeasor seeking to recover a share of the loss. See Virginia Ins. Reciprocal, 765 So.2d at 232. "A claim for medical malpractice does not change its character merely because it is asserted by another medical provider who is also at fault." Id. at 234. In either circumstance the medical provider is "facing a charge of medical malpractice and should be entitled to the protection afforded by the presuit screening procedure." Id. Thus, we agree with the First District that "there is no reasonable basis to distinguish between a medical malpractice claim made in the original lawsuit and a medical malpractice claim made in a subsequent complaint for contribution." Id. at 235.
We further agree with the First District's assessment of the decision in Walt *811 Disney World Co. v. Memorial Hospital, 363 So.2d 598 (Fla. 4th DCA 1978). In dismissing Disney World's contribution claim for noncompliance with the medical malpractice mediation requirements, the Fourth District stressed that mediation was required to determine whether Memorial Hospital "was actually actionably negligent in the care or treatment of the patient" in order to support the contribution claim. Id. at 600. As aptly expressed by the First District, the point of both the presuit screening requirements at issue here and the mediation requirement at issue in Walt Disney is "to resolve the underlying claim of medical malpractice," not to resolve an issue of contribution. Virginia Ins. Reciprocal, 765 So.2d at 233.
Having determined that a contribution claim based on medical malpractice is subject to the presuit screening requirements of chapter 766, including the provisions that toll the statute of limitations, we caution contribution claimants that the presuit screening requirements are not applicable where the liability of the joint tortfeasor has already been determined. See Baptist Hosp. of Miami, Inc. v. Abaunza, 563 So.2d 174 (Fla. 3d DCA 1990).[6] As explained by the Third District in Baptist Hospital, these "statutory procedures are intended to be applied preliminary to a determination of liability. Where there has been a determination of liability on the professional negligence claim, an action for contribution is not properly deemed to be within the statutory definitions of sections 766.104 and 766.106." Id. at 175 (citation omitted); accord Virginia Ins. Reciprocal, 765 So.2d at 235.
For the reasons expressed above, we hold that the time for filing a suit for contribution based on a claim of medical malpractice may be tolled by compliance with the medical malpractice statutory presuit screening requirements in chapter 766. Accordingly, we approve the decision in Virginia Insurance Reciprocal and disapprove the decision in Wendel.
It is so ordered.
ANSTEAD, C.J., WELLS, PARIENTE and LEWIS, JJ., and SHAW and HARDING, Senior Justices, concur.
NOTES
[1] Section 766.104(1), Florida Statutes (1997), provides that no medical negligence action can be filed unless the attorney filing the action has made a reasonable investigation to determine a good faith belief that there has been negligence in the care or treatment of the claimant. The initial pleading must be accompanied by a certificate of counsel attesting to such.
[2] Section 766.203, Florida Statutes (1997), which is entitled "Presuit investigation of medical negligence claims and defenses by prospective parties," provides in pertinent part:

(1) Presuit investigation of medical negligence claims and defenses pursuant to this section and ss. 766.204-766.206 shall apply to all medical negligence, including dental negligence, claims and defenses. This shall include:
(a) Rights of action under s. 768.19 and defenses thereto.
(b) Rights of action involving the state or its agencies or subdivisions, or the officers, employees, or agents thereof, pursuant to s. 768.28 and defenses thereto.
(2) Prior to issuing notification of intent to initiate medical malpractice litigation pursuant to s. 766.106, the claimant shall conduct an investigation to ascertain that there are reasonable grounds to believe that:
(a) Any named defendant in the litigation was negligent in the care or treatment of the claimant; and
(b) Such negligence resulted in injury to the claimant.
. . . .
(3) Prior to issuing its response to the claimant's notice of intent to initiate litigation, during the time period for response authorized pursuant to s. 766.106, the defendant or the defendant's insurer or self-insurer shall conduct an investigation to ascertain whether there are reasonable grounds to believe that:
(a) The defendant was negligent in the care or treatment of the claimant; and
(b) Such negligence resulted in injury to the claimant.
[3] As provided in section 766.106(2), after the presuit investigation required by section 766.203 is complete a claimant must notify each prospective defendant, and the Department of Health if any prospective defendant is a licensed health care provider, of intent to initiate litigation for medical malpractice.
[4] Section 766.106(4) further provides that this ninety-day period may be extended by stipulation of the parties and that the statute of limitations is tolled during any such extension.
[5] We recognize that some states have held that contribution actions based on medical negligence are not subject to the statutory requirements that would otherwise apply to an initial complaint for medical negligence. See, e.g., Rowland v. Skaggs Companies, Inc., 666 S.W.2d 770, 773 (Mo.1984).
[6] However, this does not include those circumstances where a nonparty is determined to have responsibility on a verdict form and is included on the form because of Fabre requirements. See Fabre v. Marin, 623 So.2d 1182 (Fla.1993), receded from on other grounds by Wells v. Tallahassee Mem. Reg'l Med. Ctr., Inc., 659 So.2d 249 (Fla.1995).